EDWARD L. WILDER *v.* DANIEL T. WILDER.

*Trespass.    Fences.    Statute.*

A- B. and C. each owned a back lot of land, constituting no part of their farms, principally uncleared and unoccupied, B.'s lot lying between, and adjoining respectively, the lots of A. and C. Each had a clearing upon his lot, occupied, and situated in respect to each other just as the lots were; and each owned wild land west of their respective clearings. An old, but not legal, fence separated said clearings, and C. had such a fence west of his clearing but not on his west line. A. and B. had no fence west of their clearings. The fences between the clearings were satisfactory to the adjoining owners. A. and B. occupied their clearings as meadows, and C. his as a sheep pasture, from which his sheep escaped sometimes over the fence west of his clearing, sometimes over the fence between him and B. into B.'s meadow, thence on to A.'s meadow, and did the damage complained of. *Held,* that A. could recover therefor in trespass; that C. was bound to restrain his animals so as to prevent their going astray and doing damage to A.; that A. was not bound to fence against them; that not being an adjoining proprietor he owed C. no duty in respect to fences.

The acts of 1853 and 1857, which were in force at the time the injuries complained of were committed, had reference to fences between *adjoining* proprietors.

THIS is an action of trespass, *quare clausum fregit ;* plea, the general issue, and was submitted to the court upon an agreed statement of facts, which is substantially set forth in the opinion of the court.

Upon said statement the court, at the December Term, 1864, BARRETT, J., presiding, rendered judgment for the plaintiff,—to which the defendant excepted.

*Sewall Fullam,* for the defendant.

The question presented by this case is this, can a man clear upon a *back lot,* without fencing the whole of the clearing, and claim damages for the feeding of cattle or sheep thereon, which happen to stray there without the knowledge of the owner?

The common law, which decides that fences were not made to keep the cattle of others out, but the cattle of the owner in, has never been adopted in this state, and the whole course of legislation on that subject shows it. See Acts of 1779, pp. 35, 100, 102 ; Acts of 1797, Slade's Com. p. 452, § § 8, 9, 10 ; Acts of 1799, Slade's Com. p. 454, No. 2, p. 457, § 7 ; Acts of 1819, Slade's Com. p. 457, No. 4 ; Acts of 1821, Slade's Com. p. 459, No. 6 ; Rev. Stat. 1840, p. 413, § 16 ; Com. Stat. 1851, p. 519, § § 16, 17 ; Acts of 1857, p. 34, proviso to § 1. This proviso made it the duty of the plaintiff either to make

Wilder *v.* Wilder.

and maintain a legal fence around the whole lot or around the part occupied. The neglect of that duty occasioned the damage.

The fence between Hubbard and the defendant was maintained by them jointly and was such as they chose to have. Neither could claim damages of the other, if cattle should break through, unless the fence was lawful. If the plaintiff let his land lie common with Hubbard's, he trusted to Hubbard's fence, and should have no better right to redress than Hubbard had.

If any action would lay for the injury, it is difficult to see how the action for trespass can be maintained. The defendant's fault, if any, was an omission of duty.

*Wm. H. Walker,* for the plaintiff.

1. By the laws of Vermont, under which the alleged trespass was committed, the obligation to maintain and repair fences is imposed upon the owners and occupants of adjoining lands *only.* No. 29 of the laws of Vermont enacted in 1853.

2. At common law every man is bound to keep his cattle within his own close, at his peril; and the statutes of Vermont have altered it only as between owners of adjoining closes and occupants under them.

3. Each owner of land is under obligations to fence only against cattle lawfully within the adjoining close and not against trespassers there, stray cattle, or cattle which have escaped through the insufficiency of their owner's fences. *Jackson* v. *R. & B. R.R. Co.,* 25 Vt. 150; *Rust* v. *Low,* 6 Mass. 90; *Avery* v. *Maxwell,* 4 N. H. 36.

The opinion of the court was delivered by

PIERPOINT, CH. J. This is an action of trespass *quare clausum fregit,* and the questions arise upon an agreed statement of facts.

It appears from the case that the plaintiff, one Hubbard, and the defendant each own a lot of land in the county of Windsor, lying near together; Hubbard's lot lying between the lots of the plaintiff and the defendant, and adjoining the one on the one side and the other upon the other side. The principal part of all these lots are uncleared and unoccupied, and constitute no part of the farm, properly so called, of either of the owners. They are back lots; each has a clearing upon his lot which he occupies, and the several clearings are situated with respect to each other just as the lots are, Hub-

bard's clearing lying between and separating the clearings of the plaintiff and the defendant. Each owns uncleared and wild unoccupied land, lying west of their respective clearings and extending across their entire lots. There is an old, but not a legal fence, on the line between the plaintiff's and Hubbard's clearings and the same on the line between Hubbard's and the defendant's clearings. The defendant has a fence, but not a legal one, west of his clearing, but not on or near his west line ; neither Hubbard nor the plaintiff has any fence west of their clearings. The fence between Hubbard and the plaintiff, and that between Hubbard and the defendant, though not legal, is satisfactory to the adjoining owners. The plaintiff and Hubbard occupy their clearings as meadow land ; the defendant occupies his as a sheep pasture. The case shows that the defendant's sheep escaped from his pasture sometimes over the fence west of his clearing, and sometimes over the fence between him and Hubbard into Hubbard's meadow, and from thence into the plaintiff's meadow, where they did the damage complained of, and the question now is whether the defendant, under such circumstances, is liable for such damage.

It is claimed on the part of the defendant that he is not liable, because the plaintiff had not a legal fence enclosing the meadow where the damage was done.

At the time the injuries complained of were committed, the act of 1853 and the act of 1857, relating to the building and repairing of fences, were in force.

The 1st section of the act of 1853 defines what shall be a legal fence. The 2nd section provides that the owners or occupiers of adjoining lands shall make and maintain equal portions of the division fence between their respective lands, except such lands as the owners thereof shall choose to let lie vacant and common. The 3rd section provides that any person or persons owning uncultivated, unimproved and unoccupied lands, and shall choose to let the same remain open and common, shall not be compelled to fence the same. By the act of 1857 this 3rd section is so modified that it shall not extend to such unoccupied lands when they constitute a part of what is occupied by the owner as a farm. This act also provides that when the owner shall occupy any part of a tract of wild land, not properly a part of

Wilder *v.* Wilder.

his farm, he shall be liable to erect and maintain a legal and sufficient fence wholly around such portion as he occupies, unless he shall elect to maintain his part of the fence on the division lines.

These several provisions, when applied to the facts of this case, imposed upon the owners of these lots referred to, the duty of making and maintaining their several portions of a legal fence around their entire lots upon their division lines, or else of enclosing by a legal fence those portions which they severally occupied; neither of which had been done.

In determining the effect of this neglect upon the rights of the parties to this suit, it is to be borne in mind that all the several provisions of the statute relating to fences, have reference to fences between adjoining proprietors, imposing mutual duties and obligations upon each proprietor in respect thereto, or prescribing what, under certain circumstances, one may do in lieu of making a division fence.

The object and purpose of all legislation on this subject is to require and compel the owners of animals to restrain them from going at large, and to keep them upon their own premises.

The duty which is thus imposed upon adjoining proprietors is a duty which each owes to the other, and is one which they may mutually dispense with, and if they do so other persons cannot complain of it, provided they keep their animals at home, neither can such other persons take advantage of it, and suffer their animals to trespass upon them with impunity; other persons are under the same obligation to restrain their animals and keep them at home that they would be if such adjoining proprietors kept up legal fences. These principles are fully recognized in *Jackson* v. *R. & B. R. R. Co.*, 25 Vt. 150.

In this case the plaintiff occupied his clearing as a meadow and had no occasion to build a legal fence to restrain his own cattle, as it does not appear that he ever put any upon it; on the other hand, the defendant occupied his clearing as a pasture, and was under obligation to restrain his animals so as to prevent their going astray and doing damage to the plaintiff. The plaintiff was not bound to fence against them, not being an adjoining proprietor; the plaintiff owed the defendant no duty in respect to fences.

So to if the defendant elects not to build a fence upon the lines of

his lot so as to enclose the whole, but to fence his occupied part, and then suffers his sheep to go upon the unoccupied part and they escape therefrom across Hubbard's land on to the occupied land of the plaintiff and do damage, he would be liable by the express terms of the 4th section of the act of 1853, which provides that wherever the lands of two or more individuals are so situated that either may not be compelled to fence on the dividing line, etc., each owner or keeper shall be liable for all damages done on the *occupied* land of others by reason of any animal straying from his lands, etc. This section does not make the liability depend upon the fact that the place where the damage is done is or is not enclosed by a legal fence, but only that it shall be occupied land. But this section does not make the owner liable if his animals escape on to the wild and unoccupied land of another.

By the statutes in force for many years prior to the act of 1853 no person had the right to impound any beast taken doing damage, unless he had a legal fence around the enclosure where the beasts were taken, except such fence as the owner of the beasts was bound to make and repair.

In following the reasons upon which this provision was founded, and the analogies, our courts held that a party could not maintain trespass in such a case, when under the statute he could not impound.

By the act of 1853 the legislature repealed all the former provisions then in force, relating to making and maintaining fences, and established a different system. In doing this, in order to preserve harmony, they found it necessary to repeal and did repeal the 16th section of chapter 92 of the Com. Stat., which imposes the restriction upon impounding above referred to.

It is insisted by the defendant that this form of action cannot be maintained upon the facts of the case. We think otherwise; the action is brought to recover for a trespass committed by the defendant's animals on the land of the plaintiff, and is not based, in any respect, upon the insufficiency of the defendant's fences, the result and liability would be the same as if the defendant's fence had been a legal one, and the sheep had escaped and committed the trespass.

The judgment of the county court is affirmed.