**Ernest Choquette and Louise Choquette v. Robert Perrault and Rose Perrault**

[475 A.2d 1078]

No. 82-318

Present: Billings, C.J., Hill, Underwood and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed March 2, 1984

*Robert W. Davis* and *Richard C. White* of *Chimileski & White*, Newport, for Plaintiffs-Appellees.

*Robert R. Bent* of *Zuccaro & Willis*, St. Johnsbury, for Defendants-Appellants.

*John J. Easton, Jr.*, Attorney General, and *William H. Rice*, Assistant Attorney General, Montpelier, for State of Vermont.

**Underwood, J.** Subliminally it might appear that the defendants are challenging the adage: Good fences make good neighbors. The issue they raise on appeal, however, is whether a provision of the Vermont fence laws, 24 V.S.A. § 3802, exceeds the police power of the state in compelling a landowner who has no livestock to contribute equally in building and maintaining a division fence to keep the abutting landowner's livestock from straying at large.

Plaintiffs, who own a large dairy farm and pasture their land abutting the defendants, brought this suit, pursuant to 24 V.S.A. § 3808 and/or 24 V.S.A. § 3816, to recover their expenses in maintaining what they claim is the defendants' portion of the division fence separating their properties and for which the defendants refused to accept responsibility. The trial court rendered judgment for the plaintiffs.

In 1970 the defendants bought fifty acres of wooded and unoccupied land in the town of Newport and cleared two acres of it upon which they built their home. Plaintiffs own 700 acres of land and maintain a herd of 265 dairy cattle. In 1974 they bought a 310-acre parcel of land that adjoins the defendants' fifty-acre parcel and started pasturing cattle up to the division fence.

Plaintiffs' cattle repeatedly escaped through the division fence and trespassed upon the land of the defendants. Plaintiffs requested that defendants rebuild a portion of the fence but defendants refused, contending that they did not maintain

any livestock on their premises and therefore should not have to bear the cost of repairing any part of the division fence.

Plaintiffs thereupon requested the town fence viewers to examine the fence line between the adjoining lands of the parties and make a division of the fence, designating which portion of it should be maintained by each. 24 V.S.A. § 3810, § 3811. The fence viewers examined the fence on May 6, 1976, in the presence of the plaintiff, Ernest Choquette, but the defendants, who had no advance notice, chose not to participate in this proceeding. On May 14, 1976, the fence viewers certified that they divided the line fence, allocating 1752 feet as the responsibility of the defendant, Robert Perrault, and 1765 feet as the responsibility of the plaintiff, Ernest Choquette. The decision of the fence viewers was recorded in the Newport town clerk's office on the same day.

Plaintiffs then requested that defendants repair their portion of the fence as assigned by the fence viewers. Defendants again refused to repair any portion of the division fence, arguing that they were under no obligation to subsidize plaintiffs' dairy operation.

On June 17 and 18, 1976, plaintiffs repaired 850 feet of the 1752 feet of division fence that the fence viewers had allocated to be the responsibility of the defendants and thereafter brought suit in Orleans Superior Court to recover their expenses. Defendants in their answer denied the claim and raised affirmative defenses that the underlying statute upon which the plaintiffs' complaint was founded, 24 V.S.A. § 3802, was unconstitutional, under both the United States and the Vermont Constitutions.* It was their position that the statute exceeded the police powers of the state and thereby deprived the defendants of their property without due process of law. The trial court, after a bench trial, made findings and entered judgment for the plaintiffs from which the defendants timely appealed.

Leaving aside, for the moment, the action of the fence viewers, the controlling statutes are 24 V.S.A. § 3802 and § 3803, which in pertinent part provide:

---

* On the constitutionality of the fence statute see Note, *Fence Viewers and Division Fences in Vermont: New Expectations*, 8 Vt. L. Rev. 433 (1983).

Owners . . . of adjoining lands, where the lands of both parties are occupied, shall make and maintain equal portions of the division fence between their respective lands. The owner of unimproved and unoccupied land adjoining occupied land of another person shall make his proportion of a fence between such lands unless the selectmen of the town where the unimproved land lies, on request of either party, and on reasonable notice by the selectmen to parties interested, decide that such owner ought not to be compelled to make any part of such fence. The decision of the selectmen in such case shall be recorded in the town clerk's office and shall be final between the parties. . . .

*Id.* § 3802.

When the selectmen decide that the owner of the unoccupied land is not bound to make a part of the fence, the owner of the occupied land may make the whole or such part as is necessary to protect himself. When the owner occupies the adjoining land so as to be benefitted by such fence, he shall pay to the person so making it, for his equal portion thereof, its value at the time.

*Id.* § 3803.

The trial court found the pertinent statutes constitutional as they applied to the defendants because, as owners of partially unimproved and unoccupied land, they were afforded an avenue under § 3802 to petition the selectmen for an exemption from maintaining any part of the division fence. Since the defendants chose not to avail themselves of this exculpatory provision, the court concluded the defendants were in no position to argue they were being compelled to maintain an equal portion of the division fence through an invalid exercise of police power, or that they were being deprived of their property without due process of law. Since the defendants' liability to maintain an equal portion of the division fence, *id.* § 3802, arises regardless of the intervention of the fence viewers, *id.* § 3808, § 3816, the court concluded the defendants must reimburse the plaintiffs.

On appeal the defendants first claim that a provision of 24 V.S.A. Chapter 109, which requires contiguous landowners to contribute to the cost of erecting and maintaining a division fence, is unconstitutional because it exceeds the police power

of the state by depriving the defendants of their property under both the United States and the Vermont Constitutions. Second, they believe the division fence between the parties must first be divided by the fence viewers before any liability can be imposed under 24 V.S.A. § 3802. Since the defendants were not given proper notice of the fence viewing, pursuant to 24 V.S.A. § 3811, they contend the division by the fence viewers was invalid and no liability to maintain any part of it attached, and plaintiffs' attempt thereafter to enforce their action for contribution pursuant to 24 V.S.A. §§ 3808 and 3816 is void. Finally, they argue that the statute, 24 V.S.A. § 3810, granting a party aggrieved by a decision of the fence viewers only two hours in which to appeal the decision of the fence viewers to either the district or superior court, provides a period so unreasonably short as to make a farce of the appeal process and therefore violates their right to procedural due process.

Although the State of Vermont was not a party below, the attorney general was permitted to intervene in the Supreme Court for argument on the question of the constitutionality of the fence statutes, 24 V.S.A. Chapter 109. V.R.A.P. 44.

The State takes the position that the fence laws, which have been a part of our statutes for almost two centuries, are constitutional. The State points out that 24 V.S.A. § 3802 provides a method by which a property owner may seek "an administrative exemption" from the requirement of participating in the maintenance of a division fence by petition to the selectmen. Since defendants did not seek to use this "administrative remedy," the State argues they cannot thereafter challenge the constitutionality of the fence law. Moreover, the fence viewers merely determine which portion of the division fence each party is to maintain; therefore, the State insists, the duty to maintain an equal portion under 24 V.S.A. § 3802 exists regardless of any action by the fence viewers, unless exempted therefrom by an order of the selectmen. Finally, the State suggests that if the Court finds some portions of the fence statutes unconstitutional, it should sever those and save the remainder.

 Presumptively 24 V.S.A. § 3802 is constitutional. *Vermont Woolen Corp.* v. *Wackerman,* 122 Vt. 219, 223, 167 A.2d

533, 536 (1961). On its face, the statute is not unreasonable, arbitrary or capricious, nor is it devoid of a public purpose. *State* v. *Ludlow Supermarkets, Inc.,* 141 Vt. 261, 268, 448 A.2d 791, 795 (1982). Whether its application to persons in the defendants' position would render it unconstitutional can best be determined after defendants petition the selectmen for exemption from the responsibility of maintaining any part of their equal portion of the division fence and the selectmen, in the exercise of their statutory duty, decide they should not be exempted from such responsibility.

It is undisputed that defendants chose not to petition the selectmen for a statutory exemption provided by 24 V.S.A. § 3802. They refused to do so, believing it to be a futile gesture. Defendants were under the impression that the statute mandated that the decision of the selectmen go against them because their land was both "occupied and improved." But they do not know that the selectmen would have reached that conclusion as they never utilized the statutory remedy. "Occupied land" is defined by the statute as a question of fact, *Child* v. *Kingsbury,* 46 Vt. 47, 55 (1873), and would of necessity have to be determined by the selectmen. It also should be borne in mind that "unoccupied land" includes uncleared, uncultivated, wild or wooded land. *Miller* v. *Sanborn,* 54 Vt. 522, 524–25 (1881); *Wilder* v. *Wilder,* 38 Vt. 678, 680–81 (1866). Of the fifty acres owned by defendants, the selectmen were empowered to exempt them from making "any part of such fence" and could very well have found that only the two acres used for their dwelling house and curtilage were occupied and that the remaining acreage was "unoccupied." In their discretion they could absolve the defendants from building or maintaining any part of the division fence, at least until such time as the defendants should improve and occupy the remainder of their lands. 24 V.S.A. § 3803; *Miller* v. *Sanborn, supra,* 54 Vt. at 525.

The possibility that the selectmen would act unreasonably, exceed their powers or ignore their duties under color of the statute may not be considered by this Court in passing on the constitutionality of the statute. *Utah Power & Light Co.* v. *Pfost,* 52 F.2d 226, 233 (S.D. Idaho 1931); *Southern Realty Corp.* v. *McCallum,* 1 F. Supp. 614 (W.D. Tex. 1932), *aff'd,*

65 F.2d 934 (5th Cir.), *cert. denied, sub nom. Southern Realty Corp.* v. *Heath,* 290 U.S. 692 (1933). Procedural due process was always available to the defendants. They neglected to take advantage of it.

Petitioning the selectmen to be relieved of the obligation to make and maintain an equal portion of the division fence is not a method for appealing a decision of the fence viewers, but rather an administrative step available to the defendants to contest the reasonableness of the state's police power to compel them to do so based upon their peculiar circumstances. That the selectmen have some degree of discretion in reviewing the defendants' plight is apparent from the language of both 24 V.S.A. § 3802 and § 3803. Under § 3802 the selectmen are empowered to "decide that such owner ought not to be compelled to make *any part* of such fence" and their decision "shall be final between the parties." (Emphasis added.) Under § 3803, "[w]hen the selectmen decide that the owner of the unoccupied land is not bound to make a part of the fence, the owner of the occupied land may make *the whole or such part* as is necessary to protect himself." (Emphasis added.)

■ The doctrine of exhaustion of administrative remedies requires that if an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the court will act. *Smith* v. *Highway Board,* 117 Vt. 343, 349, 91 A.2d 805, 809 (1952). Until defendants have exhausted their administrative remedy by petitioning the selectmen for an exemption pursuant to 24 V.S.A. § 3802, their defense to plaintiffs' action on constitutional grounds is ineffectual.

■ Even though no appeal to a judicial tribunal is provided for in cases of rejection of the administrative remedy by the selectmen, the doctrine of exhaustion of administrative remedies applies. *Smith* v. *Highway Board, supra*; see 2 Am. Jur. 2d *Administrative Law* § 598, at 431–32. Therefore it was premature action on the part of the trial court to rule upon defendants' questions concerning the constitutionality of the fence statutes until they had exhausted the required administrative procedures; for the same reason, it would be premature on our part also. *Allen* v. *Grand Central Aircraft Co.,* 347 U.S. 535, 553 (1954); *Smith* v. *Highway Board, supra,* 117 Vt. at

349, 91 A.2d at 809–10; see 2 Am. Jur. 2d *Administrative Law* § 603, at 437–38.

If we were to affirm the judgment, by implication we would be upholding the constitutionality of the statute before the defendants have exhausted their administrative remedy, thereby leaving them with no remedy at all. Should the defendants thereafter petition the selectmen for an exemption, there is a strong likelihood they would be barred by the doctrine of res judicata or collateral estoppel. As a result, the defendants, their heirs and assigns would be forever bound to build and maintain an equal portion of the division fence, whether or not the land was occupied and improved, because the fence viewers have recorded their decision, 24 V.S.A. § 3811, and the question of the constitutionality of § 3802 would be left in limbo when applied to persons in the same situation as the defendants.

In the interest of justice the judgment must be struck and the cause remanded so the trial court can grant the defendants thirty days in which to file their petition with the selectmen of the town of Newport for an exemption, pursuant to 24 V.S.A. § 3802, if they be so advised. When the selectmen have rendered their decision on defendants' petition, upon motion of either party, the trial court should hear the merits of plaintiffs' cause of action as expeditiously as possible.

In the event that the defendants elect not to petition the selectmen for an exemption pursuant to 24 V.S.A. § 3802, or fail to file their petition to the selectmen within thirty days from the trial court's order, the trial court should enter judgment for the plaintiffs in the sum of $328.12, together with interest at the legal rate and costs.

*Reversed and remanded in accordance with the directives set forth in the opinion.*