# Louis P. Peck, Associate Justice v. James H. Douglas, Secretary of State; Judicial Nominating Board; and Madeleine M. Kunin, Governor

[530 A.2d 551]

No. 86-494

Present: Barney, C.J. (Ret.), Keyser and Underwood, JJ. (Ret.) and Costello and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed February 20, 1987

Motion for Reargument Denied May 21, 1987

*Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, and *William E. Griffin*, Chief Assistant Attorney General, Montpelier, for Defendants-Appellants.

*Janet Ancel*, Montpelier, for amicus curiae Joint Committee on Judicial Retention.

**Per Curiam.** This is a declaratory judgment action challenging the constitutionality of the present statutory provisions for appointment and legislative election of justices of the Supreme Court. Briefly put, this litigation calls into question the legality of requiring justices, who assume office as successors to justices who leave the bench prior to the end of their term, to serve out the unexpired term of their predecessor rather than be appointed to an initial six-year term of their own. Since there is no factual controversy, and the parties filed cross motions for summary judgment, the case below was heard on an agreed statement. The lower court granted summary judgment for the plaintiff, agreeing that the existing statutory procedures were incorrect, and fashioned its own version of the proper procedures. For reasons that will become evident in the opinion, we must reverse.

The problem will best be understood by first reciting the circumstances of the plaintiff's appointment and confirmation. On September 21, 1981, the plaintiff received a gubernatorial appointment to the Supreme Court to replace Justice Robert Larrow on the occasion of his retirement. At that time the unexpired term of Justice Larrow ran until February 28, 1987. The documentation of the plaintiff's appointment designated a term of office to expire on that same February 28, 1987. The Senate, on January 22, 1982, confirmed that appointment measured by Justice Larrow's unexpired term.

This appointment accorded with the terms of the statutes enacted to implement the constitutional amendments to the judicial article effective in 1974. It was also consistent with appointive and confirmatory practices existing before 1974 as established by the then statutes. The stipulation of fact filed by the parties recited the manner of carrying out a number of judicial appointments both before and after the 1974 changes. Each case represented an appointment to fill an unexpired term.

Prior to 1974 the Vermont Constitution provided in § 44 of Chapter II as follows:

> The Justices of the Supreme Court shall be elected biennially, and their term of office shall be two years.

Chapter II, § 20 set forth the standard for filling vacancies in the following language:

> The Governor, and in his absence, the Lieutenant-Governor, shall have power to commission all officers, and also to appoint officers, except where provision is, or shall be, otherwise made by law or this Frame of Government; and shall supply every vacancy in any office, occasioned by death or otherwise, until the office can be filled in the manner directed by law or this Constitution.

These sections had statutory implementation. 2 V.S.A. § 11, still in place, provides:

> The general assembly shall fill all vacancies in office existing or occurring while it is in session, where the incumbents are by law elected by the general assembly, and such officers so elected shall hold their respective offices during the unexpired term.

Also, before the 1974 amendment, the term of office of the justices was defined by the first sentence of 4 V.S.A. § 5:

> The term of office of the justices, except in case of an election or appointment to fill a vacancy, shall be for a term of two years from and including March 1 in the year of such election.

It should be noted that since the terms of office involved did not then last beyond the biennial legislative term, there could be no possibility of any term reaching beyond the next legislative election. The gubernatorial appointment was valid only until that election.

On April 9, 1974, new constitutional provisions became effective by governor's proclamation, and made a number of basic changes in the judicial organization. They also put in place a version of the so-called Missouri Plan of judicial selection. Chapter II, § 32 provided for filling vacancies in certain judicial offices, including Supreme Court justices, by original appointment by the Gover-

nor, with the advice and consent of the Senate, from a list of nominees furnished by a legislatively-established judicial nominating body.

Chapter II, § 33 provides specifically for interim judicial appointments:

> When the Senate is not in session, the Governor may make an interim appointment to fill a vacancy in the office of chief justice, associate justice of the Supreme Court or judge of any other court, except the office of Assistant Judge and of Judge of Probate, from a list of nominees presented by the judicial nominating body. A justice or judge so appointed shall hold office, with all the powers incident to the office, until the Senate convenes and acts upon the appointment submitted by the Governor. Thereafter, the appointee shall continue in office if the Senate consents to the appointment. If the appointment is not confirmed upon vote of the Senate, the appointment shall be terminated and a vacancy in the office will be created.

The new terms of judicial office are spelled out in Chapter II, § 34:

> The justices of the Supreme Court and judges of all subordinate courts, except Assistant Judges and Judge of Probate, shall hold office for terms of six years except when holding office under an interim appointment. At the end of the initial six year term and at the end of each six year term thereafter, such justice or judge may give notice in the manner provided by law of his desire to continue in office. When such justice or judge gives the required notice, the question of his continuance in office shall be submitted to the General Assembly and he shall continue in office for another term of six years unless a majority of the members of the General Assembly voting on the question vote against his continuing in office.

Finally, the last sentence of Chapter II, § 36 authorizes the General Assembly to "establish procedures for the implementation of the provisions of sections thirty-two through thirty-six."

The Legislature duly acted under this authority. 4 V.S.A. § 5 was amended to become 4 V.S.A. § 5(a), of which only the first sentence is relevant here:

> The term of the justices, except in case of an appointment to fill a vacancy, shall be for a term of six years from and including April 1 in the year of such appointment or retention under section 4(c) of this title.

The reference to 4 V.S.A. § 4(c), along with other provisions found in chapter 15 of Title 4, deal with the procedures relating to retention and the associated joint legislative committee on judicial retention. Changes were made in the filing time for declarations by justices of their intention to succeed themselves from the former requirement requiring filing ninety days prior to the expiration of the term of office to a specific filing date, September 1 of the year preceding the expiration of the term. These provisions were before the lower court as well, but were found premature at the time of hearing and not disposed of below.

The remark of Chief Justice John Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316, 407 (1819), that "[w]e must never forget that it is a constitution we are expounding" resounds as a vital truth, and we keep it in mind as we face the task before the Court in this case. The standards for interpreting constitutional language and meaning, though related, are not the same as for ordinary statutes. Canons of construction, if applied, must be used more cautiously and sometimes differently. This is so because a constitutional provision, unlike a statute, usually operates to limit or direct legislative action. See *Dresden School District* v. *Norwich Town School District*, 124 Vt. 227, 230, 203 A.2d 598, 600 (1964). The value of resort to any claimed legislative intent in a constitutional amendment is considerably dissipated by the elaborate adoption procedures that also involve the workings of constitutional commissions and subsequent submission of the proposals to the people of this state.

It is of great importance to remember that, since the purpose of any constitutional enactment is to delineate the framework of government, the working details are frequently left, as here, for legislative definition. Interpretation must, therefore, not be so narrow as to present an obstacle to that function. More than one pattern of working details may well be possible and constitutional.

Even more important, it is crucial for a reviewing court to keep in mind that the judicial role in a case like this is not to seek out the preferable from among assorted profferred solutions, but

simply to determine whether or not the option selected by the legislature, even if it appears to the Court to be unwise, passes constitutional muster. See *Aronstam* v. *Cashman*, 132 Vt. 538, 545-46, 325 A.2d 361, 366 (1974). When there may be several ways that a legislature may choose to implement a constitutional provision, it is important that the Court not only limit itself to testing the statutory plan against the calls of the constitution, but also, as far as possible, leave available whatever room there may be for future alternative or amendatory action by the legislature, if it be so advised. To do otherwise would hamper the process of popular government and subject our constitution to the stresses of unnecessary and frequent amendment.*

So, here, the question is not whether the solution tendered by the plaintiff is better, or wiser, either of which it may be, but simply whether the present statutory procedure of electing or appointing justices to fill the unexpired terms of predecessors does violence to the Vermont Constitution as amended. The existing legislation does have the benefit of a presumption in favor of its constitutionality and that it was intended to carry out the constitutional directives. *Reed* v. *Allen*, 121 Vt. 202, 206-07, 153 A.2d 74, 77 (1959); *Choquette* v. *Perrault*, 144 Vt. 218, 222-23, 475 A.2d 1078, 1081 (1984). Unless such statutes exceed constitutional limitations, they are valid. *State* v. *Lambert*, 145 Vt. 315, 317, 487 A.2d 172, 173 (1985).

The plaintiff puts forward his objection to that statutory pattern on the basis that the plain language of the new constitutional provisions excludes any possibility that new appointees can be required to serve out the unexpired terms of predecessors in office. Plain language is a strong basis for arriving at constitutional meaning, especially since the elaborate adoption process minimizes the significance of deductions of legislative intent. If the constitutional language, in and of itself, unambiguously furnishes answers to the questions for decision, it prevails over extraneous aids to interpretation. *Hartness* v. *Black*, 95 Vt. 190, 198, 114 A. 44, 47 (1921).

---

* For another example of the General Assembly's view of its authority over judicial tenure under a constitutional change, see 5 Crockett, *Vermont, the Green Mountain State*, pp. 25-28 (1923), and unpublished master's thesis of William C. Hill, *Vermont Judiciary and the Tradition* submitted to Faculty of the U.V.M. Grad. College, May 1968.

But, in this case, to reach his "plain language" reading, the plaintiff must give to identical words a meaning they did not have in the constitutional provisions prior to 1974. The words "term" or "terms" as heretofore used in the constitution referred to "term of office," a fixed period of time, not to the length of the tenure of the particular officeholder. To sustain his position the plaintiff must establish a deliberate alteration in the meaning attributable to the words "term" or "terms" in the new enactment inconsistent with its former use. This is not "plain meaning"; this is interpretation and construction.

Since interpretation is required, the strictures of the *Hartness* case are not applicable. Agreeing with *State* v. *Stimpson*, 78 Vt. 124, 132, 62 A. 14, 16 (1905), that such extrinsic aids as previous construction should be resorted to with caution and reserve, nevertheless the only evidence of construction in this case, dealing with both the old provisions and the new, without exception, treat the "terms" of office as fixed, and not measured by incumbency. Also significant is the fact that the very legislature in 1971 that dealt with the constitutional proposal that became the 1974 constitutional amendment confirmed Justice Daley for the balance of an unexpired term. Recognizing this practice as evidence of the constitutional meaning of "term" and "terms" accords with established constitutional law. *State* v. *Graves*, 119 Vt. 205, 215, 122 A.2d 840, 847 (1956). With those key words referring to fixed terms of office, the prior practice of filling unexpired terms can be enacted as procedures under the new constitutional provisions without constitutional infirmity. Taking this together with the previously-mentioned, well-established presumption in favor of constitutionality, *Re Montpelier & Barre R. R.*, 135 Vt. 102, 103-04, 369 A.2d 1379, 1380 (1977), the result reached below must yield to the existing constitutional statutory scheme.

Therefore, the rejection of those provisions by the trial court must be overturned, and the balance of the cause sent back for adjudication of any unresolved issues. Those issues are to be disposed of in a manner consistent with the views expressed in this opinion.

*The summary judgment order holding 4 V.S.A. § 5(a) unconstitutional is reversed, and the cause is remanded.*