## Chester S. Ketcham, Karl W. Neuse and James C. Foley v. Thomas J. Lehner, Court Administrator of the State of Vermont; Philip H. Hoff, Chair of Judicial Nominating Board; & Judge Stephen Martin

[542 A.2d 290]

No. 87-487

Present: Barney, C.J. (Ret.), Keyser, J. (Ret.), Springer, D.J. (Ret.) and Connarn, D.J. (Ret.), Specially Assigned

Opinion Filed February 12, 1988

*Langrock Sperry Parker & Wool*, Middlebury, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *Andrew W. MacLean*, Assistant Attorney General, Montpelier, for Defendants-Appellees Lehner and Hoff.

*Frank L. Bunting*, Brandon, for Defendant-Appellee Martin.

**Barney, C.J.** (Ret.), Specially Assigned. This litigation concerns a vacancy on the District Court bench. The plaintiffs, who are Addison County residents and long-time members of the Vermont bar, are potential candidates for that vacancy. Their complaint seeks to enjoin and set aside actions by the judicial branch that, if not enjoined, would have the effect of changing the va-

cancy to be filled from Addison County, the residence and regular assignment of the vacating judge, to a different unit of the District Court system.

Specifically, plaintiffs' complaint asks that the existing vacancy be declared to be a vacancy in Unit II (which includes Addison County), that the court administrator be directed to renotice it as such, that the administrative judge's assignment of District Judge Michael Kupersmith to Unit II be declared a temporary assignment, and that a preliminary order be issued enjoining the defendants from filling any vacancy in Unit III (the unit from which Judge Kupersmith was transferred) until these declarations have been made. The lower court, after making findings, denied the injunction and refused the other relief requested. A majority of this Court affirms the trial court's denial.

The controversy takes shape from the following facts. The governor appointed District Judge Frank Mahady to be an associate justice of the Vermont Supreme Court. At the time of the appointment, Judge Mahady was regularly assigned to Unit II of the District Court, which, under Administrative Order No. 2, territorially consists of the counties of Addison, Chittenden, Franklin and Grand Isle. His residence was in Addison County. When Judge Mahady was appointed to the Supreme Court, the administrative judge changed the regular assignment of Judge Kupersmith from Unit III to Unit II. A memorandum was then circulated to the members of the Vermont bar by the Judicial Nominating Board giving notice of a vacancy on the District Court and stating that the new appointee would be regularly assigned to Unit III, encompassing Caledonia, Essex, Lamoille, Orange, Orleans and Washington counties.

The plaintiffs initially take the position that the appointive power given to the governor by Chapter II, §§ 32 and 33, of the Vermont Constitution carries with it the power to appoint to the particular unit in which the original vacancy occurred. Other than the general language authorizing the governor to make an appointment to "fill a vacancy in the office," appearing in both §§ 32 and 33, there is no constitutional language putting the power of assignment in the hands of the governor. Requiring the governor to appoint only to the vacancy, with no authority in the governor, or anyone else, to alter that assignment, effectually freezes the existing judicial assignments with authority in no one to

change regular assignments in response to long-term shifts in the location of judicial business.

Nowhere in the law is the governor given the power to change judicial assignments. Chapter II, § 31, of the Constitution gives the Supreme Court the authority to divide the District Court into divisions by rules "not inconsistent with law." This has been done. 4 V.S.A. § 444(a) provides, in part, that:

> The administrative judge shall assign, from time to time, one or more judges to each territorial unit of the court. Unless otherwise provided by law, each judge shall reside in the territorial unit to which he is regularly assigned but he need not be a resident of the unit when he is first appointed or assigned.

There is no language in either the Constitution or statutes which either expressly or by inference suggests that the assignment on original appointment by the governor is "permanent," under whatever authority made. Quite the contrary. The last sentence of 4 V.S.A. § 444(a), quoted above, makes it quite clear that when a regular assignment is changed after first appointment, the residency requirement follows the change. Implicit in this law is authority to make a new regular assignment.

The plaintiffs point to the phrase "from time to time" in the statute as indicating that all changes in assignment made under the authority of the administrative judge are temporary assignments, as contrasted with "permanent" assignments. Perhaps it is enough to point out that the word "permanent" does not appear anywhere in this law. The phrase "from time to time" also appears in Chapter II, § 35, of the Constitution giving the chief justice authority to appoint retired justices and judges to special service. The connotation of the phrase may consistently be expressed in both usages as meaning "as circumstances may require." It is in conformity with an intention to put flexibility into the system in order that the judicial mission to provide prompt justice may be implemented, rather than a limitation on the power to assign.

In 4 V.S.A. § 436, the statute establishing the District Court as a single court, the Legislature recognized that the authority given the Supreme Court to create territorial units (again "from time to time") is administrative. Chapter II, § 30, of the Vermont Constitution says: "The Supreme Court shall have ad-

ministrative control of all the courts of the state . . . ." The assignment and reassignment of judges among the territorial units is part of that administrative control. There is no justifiable inference, much less any specific language, putting that power anywhere else.

■ It would seem that the plaintiffs recognize that the law does not support their contention that the appointing power of the governor can be an implicit restraint on this administrative power in the judicial branch. Their second line of argument suggests that even if there is power in the administrative judge to assign and reassign judges as to their regular assignments, somehow the filling of a vacancy is a special case, and the vacancy for appointing purposes must not be changed until after the vacancy is filled.

Aside from the fact that there is nothing in the law to justify such a distinction, this position raises a special difficulty for candidates. It seems clear that a bona fide candidate for a district judge position would have trouble qualifying as such before the Judicial Nominating Board if he or she attempted to condition his or her candidacy so as to avoid being subject to the administrative orders of the Supreme Court. Administrative Order No. 18 provides as one of the duties of the administrative judge that he "[a]ssign and specially assign district and superior judges, including himself, in either the Superior or District Courts subject to the requirements of rotation as ordered by the Supreme Court." All district judges are subject to this authority.

On this basis we determine that the appointing power of the governor is to appoint to the District Court as a single court, irrespective of assignment. The power of assignment, regular or special, is in the judicial branch under our Constitution and laws. We recognize that policy arguments can be constructed that may be seen as supporting different systems and varying the weight to be given the multitudinous concerns that can be argued for one or another system. To that we must say that the present procedures are not only consistent with our laws, but represent a justifiable response to implementation of the assigned judicial mission based on the necessary limitations of manpower and resources. Cf. *Peck v. Douglas*, 148 Vt. 128, 133, 530 A.2d 551, 554 (1987) ("question is not whether the solution tendered by the plaintiff is better, or wiser . . . but simply whether the present . . . procedure . . .

318

does violence" to the law). The action of the lower court was correct under the law.

*Affirmed.*

**Connarn, D.J.** (Ret.), Specially Assigned, dissenting. Because the majority opinion fails to deal adequately with the statutory scheme relating to the appointment of judicial officers, I must dissent.

In the interpretation of statutes, the Court's task is to ensure that legislative intent is effected. To that end, "statutes dealing with the same subject matter should be construed with reference to each other as parts of one system." *Emmons* v. *Emmons*, 141 Vt. 508, 512, 450 A.2d 1113, 1115 (1982) (citation omitted). Here, interpreting the provisions of 4 V.S.A. § 444(a), the majority holds implicitly that the administrative judge has the power to make permanent changes in judicial assignments. Even assuming the correctness of this ruling, I do not believe that the majority's analysis goes far enough.

A key statute regarding the appointment of judicial officers is 4 V.S.A. § 602(b), which provides, in part: "Whenever a vacancy occurs in the office of a . . . district judge, . . . the judicial nominating board shall submit to the governor the names of as many persons as it deems qualified to be appointed *to the office*." (Emphasis added). The phrase "to the office" relates back to the office in which the vacancy occurred and implies that the governor's power of appointment is directed at filling specific vacancies. Because the governor has been given that power, any attempt by the administrative judge to fill the vacancy, however necessary or advisable, must be regarded as temporary.*

Policy considerations also support this reading of the statutory scheme. I believe that a strong sense of community identity should be encouraged between a trial court judge and the area that he or she serves. Vermont continues to be a rural state with viable traditions of local government and community involvement. The legislative goal of providing for community identity is

---

* A temporary assignment as a stopgap device would be consistent with the administrative judge's statutory duties. On the other hand, a permanent assignment under these circumstances becomes little more than a one-for-one interchange, a maneuver not contemplated under the terms of § 444(a) except in the context of rotation.

reflected in the residence requirement found in 4 V.S.A. § 444(a). This goal would not be served if a de facto seniority system were created under which a vacancy arising in a popular locale is filled by a sitting member of the judiciary from another area, and the apparent vacancy is converted to a position available in the hinterlands or in a location far removed from the original vacancy.

A further consideration involves the effect the practice at issue would have upon the pool of applicants for judicial positions. Such positions are typically sought after by senior members of the bar, most of whom have developed roots in their community. Those attorneys residing in an area where a vacancy occurs would be less motivated to pursue the judgeship—entailing its subsequent residency requirement—if it were made available only in another area.

Therefore, I do not believe that the legislature intended to grant the administrative judge the power at issue and that he exceeded his authority by failing to let the statutory process run its course. I would hold that the lower court erred in failing to grant the injunctive and other relief requested.