NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 62

No. 25-AP-337

State of Vermont

Supreme Court

On Appeal from
v. Superior Court, Bennington Unit,
Criminal Division

Cody Shores

October Term, 2025

David A. Barra, J.

Anna Cykon and Jared Bianchi, Bennington County Deputy State's Attorneys, Bennington, for
Plaintiff-Appellant.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for
Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Novotny, Supr. J.,
Specially Assigned


¶ 1. **EATON, J.** After defendant was charged with lewd or lascivious conduct with a child, the State moved to hold defendant without bail pending trial, asserting that the charged felony had an element that involved an act of violence. The trial court denied the motion, concluding that lewd or lascivious conduct did not meet the constitutional standard, and released defendant on conditions. The State appeals, arguing that the trial court used an overly narrow definition of violence. We agree and reverse and remand.

I. Constitutional and Statutory Provisions

¶ 2.     Both the Vermont Constitution and related statutes protect a defendant's right to pretrial release, subject to bail and other conditions. Chapter II, § 40 of the Vermont Constitution dictates that "[a]ll persons shall be bailable by sufficient sureties" and 13 V.S.A. § 7554(a) requires that "[a]ny person charged with an offense . . . shall . . . be ordered released pending trial."

¶ 3.     Two exceptions exist to this general presumption of release. The Constitution contains a long-time exception allowing a pretrial defendant "accused of an offense punishable by death or life imprisonment" to be held without bail "when the evidence of guilt is great." Vt. Const. ch. II, § 40(1); 13 V.S.A. § 7553 (mirroring this language). In addition, the Constitution was amended to allow a defendant to be held without bail if the defendant is

> accused of a felony, an element of which involves an act of violence against another person, . . . when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

Vt. Const. ch. II, § 40(2). The latter exception is implicated in this case.

¶ 4.     The Legislature drafted what would become Chapter II, § 40(2) during the 1991-92 and 1993-94 biennial legislative sessions.[1] See 13 V.S.A. § 7555a. "On November 8, 1994, the voters of the State of Vermont approved" the wording of the amendment and "[o]n December

---

[1] Chapter II, § 72 the Vermont Constitution outlines a multi-year process for the adoption of a Constitutional amendment. Specifically, "[a]t the biennial session of the General Assembly . . . the Senate by a vote of two-thirds of its members, may propose amendments to [the] Constitution, with the concurrence of a majority of the members of the House of Representatives." Vt. Const. ch. II, § 72. Once adopted by the Senate and approved of by the House, that proposed amendment "shall be referred to the next biennial session of the General Assembly," and "if at that last session a majority of the members of the Senate and a majority of the House of Representatives concur in the proposed amendment, it shall be the duty of the General Assembly to submit the proposal directly to the voters of the state." Id. If a majority of voters approve the amendment, it "shall become part of the Constitution of this State." Id.

13, 1994, the Governor certified the amendment thereby making it effective on that date."  13

V.S.A. § 7555a(2)-(3).

¶ 5.    The Legislature codified this second bail exception with slight changes in wording

in 1994.  See § 7553a ("A person charged with an offense that is a felony, an element of which

involves an act of violence against another person, may be held without bail when the evidence of

guilt is great and the court finds, based upon clear and convincing evidence, that the person's

release poses a substantial threat of physical violence to any person and that no condition or

combination of conditions of release will reasonably prevent the physical violence."); 1993, No.

143 (Adj. Sess.), § 2.[2]

¶ 6.    While the proposed constitutional amendment was moving through the necessary

votes and processes, the Legislature added language to certain felony crimes mandating that they

were crimes of violence for the purpose of bail.  See 1993, No. 95, § 1 (indicating conduct

constituting aggravated stalking, first-degree aggravated domestic assault, and second-degree

aggravated domestic assault "shall be considered a violent act for the purpose of determining

bail").  Lewd or lascivious conduct with a child was not one of the felonies so designated, but in

2015, the Legislature amended 13 V.S.A. § 2602 to provide that "[c]onduct constituting the

offense of lewd or lascivious conduct with a child . . . shall be considered a violent act for the

purpose of determining bail."  2015, No. 43, § 1 (codified at 13 V.S.A. § 2602(f)).

## II.  Facts and Procedural History

¶ 7.    In this case, defendant was arraigned on a one-count criminal information alleging

lewd or lascivious conduct with a child in violation of § 2602.  The State asked the trial court to

hold defendant without bail under § 7553a.  The parties agreed that lewd or lascivious conduct

---

[2]  Neither party has argued that the slight differences between the language in Chapter II, § 40(2) of the Vermont Constitution and 13 V.S.A. § 7553a are material to this case and we see no compelling reason to conclude otherwise.  Therefore, in this opinion, we do not distinguish between cases that analyze § 7553a from cases that analyze Chapter II, § 40(2).

with a child was a felony and that the weight of the evidence was great. Defendant asserted, however, that lewd or lascivious conduct with a child was not a qualifying crime for the purpose of holding defendant without bail.

¶ 8. The trial court concluded, notwithstanding § 2602(f), that lewd or lascivious conduct with a child did not include an essential element involving an act of violence. The trial court relied on a single-justice decision from this Court, State v. Madigan, to reach this conclusion. State v. Madigan, No. 2011-103, 2011 WL 4974812, at *2 (Vt. Mar. 25, 2011) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo11-103.bail.pdf (holding lewd or lascivious conduct with child is not crime of violence). Finding there were no grounds to hold defendant without bail, the court released defendant with conditions. The court refused to consider § 2602(f), relying on a recent single-justice decision from this Court, State v. Beldiman. No. 25-AP-211, 2025 WL 1993825 (Vt. July 16, 2025) (unpub. mem), https://www.vermontjudiciary.org/media/19213 (concluding that aggravated stalking is not crime of violence despite statutory language to contrary). In that case, the Court held that a statutory provision analogous to § 2602(f) was a "nullity," reasoning that the Legislature could not "alter, abolish, or infringe any part of [the] Constitution" by "imput[ing] an element of violence into [an] offense." Id. at *4 (citing Vt. Const. ch. II, § 6).

¶ 9. The State appealed to this Court under 13 V.S.A. § 7556(c). On appeal, the sole issue is whether lewd or lascivious conduct with a child is a crime that involves an act of violence. The State argues that the trial court misconstrued § 2602(f) by failing to make every "presumption . . . in favor of the constitutionality of a statute." Clark v. City of Burlington, 101 Vt. 391, 397, 143 A. 677, 679 (1928). In the alternative, the State argues that "molesting" a child is an inherently violent crime.

### III.  Standard of Review

¶ 10.    "[I]t is the province of the court to decide whether Vermont's laws comply with the State Constitution."  Brigham v. State, 2005 VT 105, ¶ 10, 179 Vt. 525, 889 A.2d 715 (mem.); see Vt. Const. ch. II, § 6 (defining legislative powers and providing that Legislature has "no power to add to, alter, abolish, or infringe any part of this Constitution").  Thus, "[t]he meaning of the Vermont Constitution and corresponding statutes raise questions of law that we consider de novo."  State v. Downing, 2020 VT 101, ¶ 8, 213 Vt. 468, 247 A.3d 150.

¶ 11.    Our goal in interpreting the language of the Constitution "is to discover and protect the core value that gave life to [the] constitutional provision, and to give meaning to the text in light of contemporary experience."  State v. Misch, 2021 VT 10, ¶ 9, 214 Vt. 309, 256 A.3d 519 (quotation omitted).  "[W]e begin with the text of the provision, understood in its historical context, and we consider our own case law, the construction of similar provisions in other state constitutions, and empirical evidence if relevant."[3]  Id.  Unlike the interpretation of a statute where implementing the legislative intent is our paramount goal, constitutional provisions are not subject to the same canons of construction.  Peck v. Douglas, 148 Vt. 128, 132, 530 A.2d 551, 554 (1987).  Indeed, "[t]he value of resort to any claimed legislative intent in a constitutional amendment," while informative, "is considerably dissipated by the elaborate adoption procedures that also involve the workings of constitutional commissions and subsequent submission of the proposals to the people of this state."  Id.

---

[3] The final two considerations are not addressed in this opinion because empirical evidence is not relevant to this situation and the bail provisions in other states' constitutions are sufficiently different from Vermont's that they provide little guidance.  See 4 W. LaFave et al., Criminal Procedure § 12.3(b) (4th ed. 2024) ("The practice in the fifty states regarding preventive detention is quite diverse, largely because of the remarkably different state constitutional provisions to be found on the subject of bail.").

## IV. Definition of Violence

¶ 12.  The constitutional language at issue here was added in 1994 through the adoption of § 40(2), in which "the voters of Vermont expressed their desire to permit pretrial detention, in appropriate circumstances, of those accused of violent crimes so as to prevent further harm to the victims of the crimes and to others." State v. Madison, 163 Vt. 360, 363, 658 A.2d 536, 539 (1995) (per curiam).  In light of this history, we examine the language of the constitutional provision and cases interpreting it.

¶ 13.  As outlined above, to hold a person without bail, § 40(2) requires that the crime be a felony, an essential element "of which involves an act of violence against another person." Therefore, we begin our analysis of the definition of "violence" as employed in Chapter II, § 40(2) and § 7553a.  When considering "the intent of the constitutional amendment or the statute, we first look to the plain meaning of the language in question." Madison, 163 Vt. at 368, 658 A.2d at 541-42.  Because neither the Constitution nor § 7553a define "act of violence," several of this Court's prior cases have relied on dictionary definitions of "violence" or "violent" to determine whether the felony charged met the constitutional standard.  See State v. Bryan, 2016 VT 16, ¶ 23, 201 Vt. 298, 142 A.3d 204 (explaining that where terms are not defined, Court looks to dictionary definitions "[t]o determine the ordinary meaning").

¶ 14.  This Court first examined the meaning of the term "violence" for the purpose of bail in State v. Madison, which raised the question of whether sexual assault had an element involving an act of violence.  163 Vt. at 395, 659 A.2d at 127.  We rejected the notion that an act of violence was limited to acts of physical force and explained that, for the purpose of § 40(2) and § 7553a, the definition of "violence" included both "physical force employed so as to violate, damage, or abuse" in addition to the "abusive or unjust use of power."  Id. (quotation omitted) (citing Webster's II Riverside University Dictionary 1289 (1984)).  Relevant to the issue on appeal in Madison, we determined that the conduct involved in a sexual assault, specifically, "touching

6

and invasion of the victim's body against her will" fit within both of those definitions of violence. Id. Consequently, we concluded that sexual assault was a crime of violence for the purpose of Chapter II, § 40(2) and § 7553a. Id.

¶ 15. In State v. Madigan, a single justice of this Court concluded that lewd or lascivious conduct with a child did not have an element involving an act of violence based on a narrower definition of "violence." 2011 WL 4974812, at *2. The Court specifically rejected the broad definition of "violence" adopted in Madison and instead held that "[t]he plain language of § 7553a demonstrates that the Legislature intended 'violence' in the context of this statute to refer to physical violence, not abusive or unjust uses of power." Id. The Court relied on the fact that lewd or lascivious conduct with a child "does not require touching or contact, let alone a touching that could be characterized as physically forceful." Id. at *3 (citing State v. Wiley, 2007 VT 13, ¶ 11, 181 Vt. 300, 917 A.2d 501). Finally, the Court also indicated that it was persuasive that when § 40(2) was added to the Constitution the Legislature had not affirmatively stated "that conduct constituting the offense of lewd and lascivious conduct with a child should be considered a violent act for the purpose of determining bail." Id.

¶ 16. As noted above, the Legislature responded by amending § 2602 to state that "[c]onduct constituting the offense of lewd and lascivious conduct with a child under this section shall be considered a violent act for the purpose of determining bail." 2015, No. 43, § 1 (adding § 2602(f)).

¶ 17. Madigan's more limited definition of violence was not extended in subsequent cases. The Court once again endorsed the broad definition of "violence" outlined in Madison in State v. Bryan. 2016 VT 16, ¶ 24. In Bryan, the Court considered whether sexually touching a minor violated a probation condition prohibiting violent or threatening behavior.[4] Id. ¶ 1. Like

---

[4] Defendant points out that, in Bryan, the Court necessarily looked to the factual circumstances to determine if the defendant's actions violated his conditions of release to not

7

Madison, Bryan explained that " 'violence' may be defined as the exercise of physical force so as to violate, injure, damage, or forcibly interfere with personal freedom," in addition to "the abusive or unjust use of power." Id. ¶ 24 (alterations and quotations omitted) (quoting Oxford English Dictionary 654-55 (2d ed. 1989) and American Heritage Dictionary 1431 (New College ed. 1979)). Bryan further noted that "violent actions are those characterized by unjust or improper force." Id. (quotation omitted) (quoting Webster's New International Dictionary 2846 (2d ed. 1961)). The Court also emphasized that in determining "whether a given exercise of physical force is violent," it should be considered " 'with reference to its effect on [the recipient].' " Id. (quoting Webster's New International Dictionary 2846 (2d ed. 1961)). Applying those definitions, we concluded that sexually touching a minor was a violent act. We explained that "oppressively, unjustly, and corruptly exploit[ing] [a] power imbalance" to target a minor victim "may be, fairly and plainly, considered violent." Id. ¶ 25. Specifically, we described that the defendant had "engaged in [an] abusive or unjust use of power" by "employing threats in his efforts to engage in sexual conduct with his minor female target" and, that the victim's "young age and the sexual nature of [the] defendant's acts made his conduct an unjust and improper use of force." Id. (quotations omitted).

¶ 18.    In Bryan, the Court distinguished Madigan by explaining that, the combination of Madigan and Madison "established that for purposes of bail eligibility a charged offense that involves sexual conduct with a minor must have an element of physical contact to be considered violent." Id. ¶ 21.

---

engage in violent, assaultive, or threatening behavior. 2016 VT 16, ¶ 1. According to defendant, the Court should place less weight on the reasoning in Bryan due to this different and distinguishing context. We are not persuaded. The Court's analysis and conclusion regarding what acts generally should be considered "violent," are directly relevant to the question here. The elements of a crime may involve an act of violence and a specific act or type of act may also be violent.

¶ 19.    State v. Perron continued to rely on the definitions of "violence" articulated in Madison.  State v. Perron, No. 24-AP-163, 2024 WL 3416096 (Vt. July 12, 2024) (unpub. mem.), https://www.vermontjudiciary.org/media/18069.  In Perron, the Court addressed whether a threat to use a deadly weapon on another person in violation of § 1024(a)(5) was an act of violence.  We began by noting the Court's consistent reliance on the "expansive dictionary definition of 'violence' " which included "an abusive or unjust use of power."  Id. at *5-6 (quotation omitted).  Ultimately, we concluded that "[t]he threatened use of a possessed deadly weapon against another person is precisely the sort of abusive and unjust use of power that fits within the definition of 'violence' under § 7553a."  Id. at *6.

¶ 20.    Importantly, in Perron, we also deviated from the notion that violence required physical contact.  We began by recognizing that the crime at issue—a threat to use a deadly weapon on another person—did not include an essential element requiring physical contact between the defendant and the victim.  Id. at *6.  However, we reasoned that "[w]hen a person is armed with a deadly weapon and threatens to use that deadly weapon on another, the nature of that conduct is intrinsically violent under the noted definitions of that term."  Id. at *6; see also State v. Watson, No. 2012-308, 2012 WL 6827284, at *2 (Vt. Oct. 3, 2012) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo12-308.bail.pdf ("The creation of fear of imminent serious bodily injury is that type of abusive or unjust use of power contemplated by the statute.") (citing Madison, 163 Vt. at 390, 659 A.2d at 124).  We supported this conclusion by referring to the broad definitions of violence articulated in our prior cases outlined above: we described that the crime was violent because it was "th[e] type of abusive or unjust use of power contemplated by § 7553a" and "[q]uintessentially . . . an action characterized by unjust or improper force."  Perron, 2024 WL 3416096, at *5 (alteration and quotations omitted).

¶ 21.    Furthermore, Perron also explicitly disagreed with the reasoning in Madigan.  Id. at *7.  Perron explained that, in analyzing the plain language of the statue, "despite Madigan's

9

suggestion otherwise" there was "no sound basis to conclude that the term 'violence' under § 7553a demands actual physical contact." Id.

¶ 22. Defendant asserts that the term "violence" should be construed narrowly, considering the protected liberty interest at stake. See Downing, 2020 VT 101, ¶ 26 (explaining "[t]he context of the adoption of the constitutional amendment indicate that it was intended to be narrowly construed"). We addressed a similar argument in Perron. We reasoned that to adopt the defendant's narrow interpretation of violence as requiring physical touch, "would except from § 7553a's reach crimes that, although clearly involving an act of violence, do not expressly require proof of physical contact" and concluded that we did "not believe that the Legislature intended to exclude such crimes from the scope of § 7553a." Perron, 2024 WL 3416096, at *7. We explained that "we avoid interpreting statutes that would lead to such absurd consequences." Id.

V. Lewd or Lascivious Conduct

¶ 23. Therefore, we turn to applying these definitions to the charge here. In deciding whether a crime involves an act of violence, we look to the elements of the crime. State v. Filippo, 172 Vt. 551, 551-52, 772 A.2d 531, 532 (2001) (mem.) (citing 13 V.S.A. § 7553a). "[T]he ordinary, plain meaning of 'element' is the traditional meaning associated with criminal charges, i.e., 'those constituent parts of a crime which must be proved by the prosecution to sustain a conviction.' " Id. at 552, 772 A.2d at 532 (alteration omitted) (citing Black's Law Dictionary 520 (6th ed. 1990)). Consequently, the term "element" as used in § 40(2) and § 7553a "refers to the statutory components of the felony," the essential elements of the crime charged, and "not the evidence that will be offered to prove the felony." Id. Thus, our analysis is necessarily confined to the elements the State must prove to convict a defendant of lewd or lascivious conduct with a child, and not the specific evidence that the State would offer in the instant case. If one of the elements involves an act of violence, the crime qualifies for hold without bail consideration for purposes of § 40(2) and § 7553a.

10

¶ 24. The State charged defendant with violating 13 V.S.A. § 2602(a)(1). Pursuant to that statute, the offense of lewd or lascivious conduct with a child occurs when an individual

> willfully and lewdly commit[s] any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child.

§ 2602(a)(1).

¶ 25. "[T]he determination of whether an act is 'lewd' under § 2602 depends on the nature and quality of the contact, judged by community standards of morality and decency in light of all the surrounding circumstances, accompanied by the requisite, specific lewd intent on the part of the defendant." State v. Squiers, 2006 VT 26, ¶ 11, 179 Vt. 388, 896 A.2d 80.

¶ 26. "[T]he plain language of § 2602 indicates" that the Legislature drafted the statute to be "aimed at preventing the sexual exploitation of children." State v. Beaudoin, 2008 VT 133, ¶ 38, 185 Vt. 164, 970 A.2d 39. Therefore, a person violates § 2602 by acting "upon or with" the body of a child. However, "lewd and lascivious conduct does not necessarily require physical contact between the perpetrator and victim." Wiley, 2007 VT 13, ¶ 11. For example, in State v. Johnson, we affirmed that the element requiring an act "upon or with the body of a child" may be satisfied upon a finding that the defendant "caused the child to touch his own body in a sexually stimulating or erotic manner." 158 Vt. 344, 348, 612 A.2d 1114, 1116 (1992) (quotation marks omitted).

¶ 27. With the definition of violence and the elements of the crime in mind, we conclude that lewd or lascivious conduct with a child is a felony crime, an element of which includes violence, for the purpose of § 40(2) and § 7553a. Consonant with that conclusion, we overrule State v. Madigan. Although we do not lightly overrule precedent, "at the same time we are not slavish adherents to prior decisions." State v. Haynes, 2019 VT 44, ¶ 24, 210 Vt. 417, 215 A.3d 1094 (quotation omitted). Here, several considerations weigh in favor of overruling Madigan.

11

First, this was a single-Justice decision that was made without the benefit of full-Court consideration. Second, as detailed above, <u>Madigan</u> relied on a narrow definition of violence and a physical-contact requirement that were at odds with both prior and subsequent decisions on the topic. See 2011 WL 4974812, at *2. For these reasons, we conclude that <u>Madigan</u> reached an incorrect conclusion regarding whether the felony of lewd or lascivious conduct with a child has an essential element that includes an act of violence.

¶ 28. Lewd or lascivious conduct with a child necessarily requires an "oppressive[], unjust[], and corrupt[]" exploitation of an adult-child power imbalance. <u>Bryan</u>, 2016 VT 16, ¶ 25; see also <u>State v. Thompson</u>, 150 Vt. 640, 644, 556 A.2d 95, 98 (1989) ("[C]onsent by a minor is not legally possible."); 13 V.S.A. § 2602(a)(2) ("This section shall not apply if the person is less than 19 years old, the child is at least 15 years old, and the conduct is consensual."). Indeed, we have observed that "the plain language of § 2602 indicates that the statute is aimed at preventing the sexual exploitation of children." <u>Beaudoin</u>, 2008 VT 133, ¶ 38. This forceful exploitation and violation of a child's freedom with "the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child," § 2602(a)(1), is as an abusive and unjust use of power over a child and thus fits squarely within the definition of violence employed by this Court. See <u>Madison</u>, 163 Vt. at 395, 659 A.2d at 127.

¶ 29. Although many instances of lewd or lascivious conduct with a child involve physical contact between the defendant and the victim even in the absence of any physical touching, a lewd or lascivious act "upon or with the body" of a child remains an "abusive or unjust use of power." <u>Id.</u> (quotation marks omitted). In <u>In re A.P.</u>, we explained that the harm from lewd or lascivious conduct arises from "an invasion of an individual's bodily privacy or integrity, or other cognizable interest." 2020 VT 86, ¶ 12, 213 Vt. 291, 246 A.3d 399. Whether that invasion occurs from the imposition of forceful sexual physical contact on a child or a forceful imposition of sexual control over that child that nonetheless violates a child's bodily privacy or integrity is of

12

no consequence. See Johnson, 158 Vt. at 348, 612 A.2d at 1116 (upholding lewd or lascivious conduct conviction when defendant encouraged child to masturbate in presence of others). Consequently, we reaffirm the reasoning in Perron that conduct that "forcibly interferes with personal freedom" even in the absence of physical contact can "amount[] to the type of abusive or unjust use of power contemplated by § 7553a." 2024 WL 3416096, at *6 (quotations and alterations omitted).

¶ 30. Madigan relied in part on the legislative history that showed § 40(2) and § 7553a arose in response to " 'serious injury and damage . . . done to members of society' perpetrated by persons allowed out on bail when those persons, 'by behavior or actions . . . indicated that the likelihood of further injury to society [was] extremely high.' " 2011 WL 4974812, at *2 (citing Sen. Jour. 398-402, 1991-1992 Gen. Assem., Bien. Sess. (Vt. Apr. 1, 1992)). We agree that this legislative history is informative. However, we believe it supports the conclusion that lewd or lascivious conduct with a child is a crime of violence. Madigan recognized the seriousness of lewd or lascivious conduct with a child but concluded that because physical contact was not an essential element, the crime was not always a crime of violence. Id. at *2. We disagree. The acts required to meet the elements of lewd or lascivious conduct with a child are harmful, serious, and damaging to some of the most vulnerable members of society. See id. As described above, while the harm created by lewd or lascivious conduct with a child might, in some instances, be more mentally than physically damaging to some minor victims, the danger of the violence is still acute. In keeping with the goal of the amendment, permitting pretrial detention for those accused of lewd or lascivious conduct with a child "prevent[s] further harm to the victims of the crimes and to others." Madison, 163 Vt. at 363, 658 A.2d at 539.

¶ 31.    The Legislature's amendment of § 2602(f) to explicitly denote this felony as one involving violence is instructive and persuasive, but not determinative to our analysis.[5] It is the Court, not the Legislature, which must interpret the meaning of constitutional provisions. See Turner v. Shumlin, 2017 VT 2, ¶ 21, 204 Vt. 78, 163 A.3d 1173 (holding that Court must determine "the meaning of the Vermont Constitution"). Our interpretation of the term "violence" as "abusive or unjust uses of power" dovetails with the Legislature's intent to "prevent[] the sexual exploitation of children." Beaudoin, 2008 VT 133, ¶ 38. The Legislature's attempt to mandate that lewd or lascivious conduct with a child "shall be considered a violent act for the purpose of determining bail," § 2602(f), is not determinative of the scope of § 40(2). However, it supports our conclusion that lewd or lascivious conduct with a child has an element involving an act of violence. The matter is remanded to the criminal division for consideration of the State's request to hold defendant without bail under § 7553a.

Reversed and remanded for further proceedings consistent with this opinion.


FOR THE COURT:


_____

Associate Justice


---

[5] The State asserts that the Court in Madigan "relied heavily on the Legislature's power to designate whether a crime should be considered a violent act for the purpose of determining bail" and argues that we should adopt that perspective here. We disagree. As we explained in State v. Beldiman, the Court's decision in Madigan was grounded in the Court's own analysis of the crime, and "the absence" of a legislative mandate that the offense contain an act of violence was not determinative, but instead, "was viewed to be in accord with the court's own reasoning." Beldiman, 2025 WL 1993825, at *5 (citing Madigan, 2011 WL 4974812, at *3).

14