CARROLL, J.
¶ 1. Defendant appeals the trial court's requirement that he post $ 100,000 cash or surety bond to mitigate any potential risk that he flee from prosecution. See 13 V.S.A. § 7554(a)(1)(E). He is currently held in custody for failure to post bail while he awaits trial on three counts: aggravated assault on a law enforcement officer by threatening with a deadly weapon ( 13 V.S.A. §§ 1024(a)(5), 1028(a)(1) ), reckless endangerment ( 13 V.S.A. § 1025 ), and interference with access to emergency services ( 13 V.S.A. § 1031 ). He challenges the imposition of bail and the amount of bail imposed. We affirm.
¶ 2. The following facts are based on the affidavit of probable cause and representations made by counsel during the bail-review hearing.[1] In October 2018, defendant's sister telephoned the state police to report that defendant was suicidal and had cut himself. Defendant lived at his mother's house. Police dispatched officers to that location, and, while those officers were en route, other officers telephoned the house. Defendant's mother answered the call and confirmed that defendant was inside the residence, he was intoxicated, and, indeed, he had cut himself. During the call, defendant was heard yelling in the background and he purportedly disconnected the call before it had finished. Minutes after the call was cut off, dispatch called the home back. Defendant's mother answered, and she reported that defendant had fled from the residence carrying a long-gun firearm. Before leaving he said, "I'm not going with them they are going to kill me."
¶ 3. The police arrived at the home and an officer located defendant outside, emerging from the surrounding woods. He was armed. According to the affidavit of probable cause, the officer warned him to drop the weapon, yet defendant advanced toward the officer, still holding the gun. Then defendant raised the firearm. In that moment, according to the affidavit, the officer shot defendant in the abdomen.
¶ 4. Defendant was taken into custody and airlifted to Albany Medical Center to treat his wounds. In November 2018, he waived extradition from New York and was arraigned in Vermont on the above-three counts.
¶ 5. At the arraignment, defense counsel argued that defendant did not pose a risk of flight from prosecution, and if he did then a low amount of bail should be imposed. Counsel explained that defendant was a lifelong resident of the town of Bennington; he was a thirteen-year employee of Kaman Composites in Bennington, where he was paid $ 16.75 per hour;
*602 "[h]is entire family... include[ing] his daughter, his mother, and his sister" live in the Bennington area; and he had waived extradition from New York. The State argued that defendant's charges involved a "mental health break," threats of self-harm, and a firearm. Moreover, "an individual who flees into the woods with a firearm, indicating to his mother that he wants to be shot by the police, poses a significant risk of flight." The State also recounted defendant's criminal history, which involved felony convictions for arson, DUI III, multiple contempt-of-court convictions, and a failure to appear. The court ruled that defendant posed a risk of flight and set bail at $ 100,000 cash or surety bond based on defendant's criminal record, the seriousness of the offense, and the nature and circumstances of the offense.
¶ 6. Defendant moved for a bail-review hearing. At the hearing, defense counsel argued that defendant posed a greater risk to himself in this case than to anyone else, unlike other possible circumstances involving the same charges, and currently there was not great evidence of defendant's guilt.[2] Counsel reiterated defendant's strong personal and family ties to the community and explained that his good character was demonstrated by his history of employment and his loving relationship with his daughter. Counsel explained that if defendant were released, he would reside at his residence alone because his mother had moved out. Also, counsel noted that defendant's health depends upon the maintenance of a colostomy bag and if he were to flee from prosecution after being released, he would be putting himself in "grave danger." While noting that defendant has prior convictions for violating conditions of release and one failure-to-appear charge on his criminal history record, counsel explained that defendant's record also showed that he had successfully completed probation and that the failure-to-appear charge was an isolated incident, not an intentional attempt to evade prosecution.
¶ 7. Defense counsel represented to the court that neither defendant nor his family could afford to post $ 100,000 cash or surety bond and requested that the court "rely on the public-defender application" when assessing defendant's financial means. The court stated that in its view, it is "a bad policy" to use this form for any purpose other than deciding whether an individual qualifies for a public defender. Defense counsel then represented to the court that defendant has no savings, and that he had lost his job in the aftermath of the events giving rise to this case.
¶ 8. The State argued that defendant's alleged interference with access to emergency services, his statement that he believed that the police were going to kill him, and his assertion that he wanted the police to shoot him are acts suggesting that defendant posed a risk of flight. The State conceded that a defendant's "ability to pay" should be analyzed. The State also argued that defendant has a lengthy criminal record, which includes two felony convictions, six misdemeanor convictions-four of which are violations of court orders-and the failure-to-appear conviction. And, according to the State, although defendant was suicidal during this offense, he also raised a loaded gun at an officer.
¶ 9. The court denied defendant's request to reduce or eliminate bail. It explained that the circumstances of the offense *603 involved the police's seeking to locate defendant at his home to ensure his well-being; defendant was not there, but he then emerged from the surrounding woods holding a long gun. When requested by police to drop the weapon, he continued to walk forward and raised the weapon. The court also found that defendant's mental condition at the time of the incident was unstable and could not be relied upon. Additionally, the defendant had prior convictions for noncompliance with court orders. Last, defendant had a failure-to-appear conviction, though the court noted that it was fifteen years old.
¶ 10. The court assessed defendant's financial means, including that his mother owns a home in Pownal. Rather than consider the information in the public-defender application, the court stated it would take defense counsel's representation that defendant is "not a person of means." The court also acknowledged that defendant has strong familial ties to Bennington County and consistent employment despite having recently been fired. These factors mitigate the risk of flight from prosecution to a degree. However, the court concluded that despite several factors suggesting that little or no bail should be imposed-including defendant's lack of funds-the "overriding issue in this case is the seriousness of the offense and the facts and circumstances of the offense." These factors create a risk of flight from prosecution. The court therefore denied defendant's motion to remove or reduce bail.
¶ 11. Defendant is unable to post bail and is currently in pretrial custody. He appealed the trial court's bail determination and makes four arguments. First, that he does not present a risk of flight from prosecution, and therefore no bail should be imposed on him. Second, that the amount of bail set by the trial court constituted an abuse of discretion. Third, that the trial court abused and withheld its discretion by refusing to consider proof of his limited financial means in the form of the public-defender application. Fourth, that the court should interpret the amended-pretrial-release statute to prohibit the setting of bail above the maximum fines for an accused's charges.
¶ 12. We reject these arguments with one exception: under the circumstances of this case, the trial court should have considered-although it need not accept the veracity of or rely upon the information contained within-the public-defender application in its analysis. However, because the court here accepted counsel's representation that defendant's financial means were limited, the refusal to consider the public-defender application was harmless. We therefore affirm.
¶ 13. The Legislature recently amended the statute governing pretrial detention and release under which courts may impose bail. 13 V.S.A. § 7554 ; 2017, No. 164 (Adj. Sess.), § 3 (eff. July 1, 2018). Under the old statute, when deciding whether to impose bail, courts were to consider whether a defendant posed a risk of not appearing in court. 13 V.S.A. § 7554 (2017). This consideration has been excised from the statute; now a defendant must be released before trial-either on his or her own recognizance or with the tendering of an unsecured appearance bond-unless pretrial release "will not reasonably mitigate the risk of flight from prosecution." 13 V.S.A. § 7554(a)(1). "Flight from prosecution" is defined as "any action or behavior undertaken by a person charged with a criminal offense to avoid court proceedings." Id. § 7576(9). In assessing whether there are conditions of pretrial release that would reasonably mitigate the risk that a defendant would attempt to evade court proceedings-or whether something more restrictive such as bail is appropriate to *604 mitigate that risk[3] -courts must consider "the seriousness of the offense charged and the number of offenses with which the [defendant] is charged." 13 V.S.A. § 7554(a)(1). Courts also must "take into account" the following factors "on the basis of available information":
[T]he nature and circumstances of the offense charged; the weight of the evidence against the accused; the accused's employment; financial resources, including the accused's ability to post bail; the accused's character and mental condition; the accused's length of residence in the community; and the accused's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.
Id. § 7554(b)(1). The revised bail statute requires courts to specifically consider the accused's "financial means" when imposing cash bail or surety bond as a condition of release. Id. § 7554(a)(1)(D)-(E).[4]
¶ 14. Anyone detained because of the inability to meet the conditions of release-including an inability to post bail-is entitled to have the conditions reviewed by a judge, and, if the conditions are not amended as requested, the judge must "set forth ... a reasonable basis for continuing the conditions imposed." Id. § 7554(d)(1). We must affirm an order imposing bail "if it is supported by the proceedings below." Id. § 7556(b). "We review the trial court's bail decision for abuse of discretion." State v. Pratt, 2017 VT 9, ¶ 20, 204 Vt. 282, 166 A.3d 600.
¶ 15. We conclude that the trial court did not abuse its discretion in determining that the pretrial release of defendant without the imposition of bail would not reasonably mitigate the risk that he might flee from prosecution.[5] The trial *605 court explained that the seriousness of the offenses charged and the nature and circumstances giving rise to the charges "overrid[e]" the other factors that would militate toward a lesser amount of bail or no bail. The court also found that defendant's mental condition was unstable and that he was unreliable at the time of the incident. And the court noted that defendant had prior convictions for noncompliance with court orders and a conviction for failure to appear, though it was fifteen years old. The court's reliance on these factors as a "reasonable basis" for continuing the imposition of $ 100,000 cash or surety bond is supported by the record below. See 13 V.S.A. §§ 7554(d)(1), 7556(b).
¶ 16. According to the affidavit of probable cause, defendant fled from his home, after engaging in self-harm, while the police were on their way to his home. He effectively stated that he would not go with the police and that he believed the police would kill him when they arrived-though they had been called to perform a wellness check on him. These circumstances of the charged offense support the trial court's finding that defendant's mental condition was "unstable" and that he could not be "relied upon." And it is not an abuse of discretion to infer, as the trial court appears to have done, that an accused who is mentally unstable and whose behavior-in the context of a police intervention-is unreliable, poses a risk of flight from prosecution that would not be mitigated by pretrial release. In concluding that defendant posed such a risk, the court also-to a lesser extent-relied on defendant's prior history of not complying with court orders and his conviction for failure to appear. These factors must be considered. Id. § 7554(b)(1). They support the conclusion that defendant poses a risk of flight from prosecution that would not be mitigated by pretrial release if the court believed, as it apparently did, that persons who fail to comply with court orders or who do not appear at scheduled court hearings are more likely to flee from prosecution while on pretrial release.
¶ 17. Although the trial court did not fully explain the relationship between the factors that it relied upon and its conclusion that defendant posed a risk of flight that could not be mitigated by pretrial release, a court conducting a bail review is not required to explicitly connect the factors that it has relied upon with its ultimate conclusion; rather, following a bail-review hearing the court simply must set forth a "reasonable basis" for continuing the challenged condition of release. Id. § 7554(d)(1). If the factors relied upon are a "reasonable basis" for continuing the condition imposed, then the court has done all that it must. See ibr.US_Case_Law.Schema.Case_Body:v1">id. We do not disturb the court's conclusion in this regard because it is supported by the record. Id. § 7556(b).
¶ 18. Defendant argues that the trial court was statutorily required to "utilize" the public-defender application when assessing his financial resources and his ability to post bail. We interpret statutes according to their plain language. State v. Pellerin, 2010 VT 26, ¶ 7, 187 Vt. 482, 996 A.2d 204. And we review without deference the trial court's legal conclusion that under 13 V.S.A. § 7554(a)(1)(D)-(E), the revised statute governing the imposition of cash bail or surety bond, the court may elect not to consider the application for public-defender *606 services when assessing a defendant's "financial means" without providing a reason for not doing so.
¶ 19. The statutory language here is clear: courts must "take into account ... financial resources, including the accused's ability to post bail" based upon "available information" when deciding whether to impose a condition of release. 13 V.S.A. § 7554(b)(1). Public-defender applications plainly contain "available information" when provided to the court during a bail-review hearing. Here, the trial court refused to consider the public-defender application upon request by defendant, even though the State did not object. And the court did not articulate its reasons for refusing to do so. Under these circumstances, this was an error; however, it was harmless because the court took counsel's representation as true that defendant was "not a person of means." See State v. Nash, 144 Vt. 427, 434, 479 A.2d 757, 761 (1984) (recognizing the "fallibility" of trial participants and noting that courts should take caution when fashioning rules that "mandate automatic reversals" so as not to become "impregnable citadels of technicality") (quotations omitted) ). Accordingly, we hold that public-defender applications must be "take[n] into account" under the circumstances of this case-specifically, when one party requests that the court consider a public-defender application at a bail-review hearing for the purpose of establishing an accused's financial resources, the opposing party does not object, and the court does not offer any reason for failing to do so.[6]
¶ 20. We note that to "take [a public-defender application] into account" simply means that a court must consider the information in a public-defender application when requested to do so and when there is no objection by the opposing party. The information contained in the application, as well as all the other information before the court, still must be analyzed to determine whether it is reliable and sufficient to prove what it is offered to show. A court considering a public-defender application will determine what weight to give it. Similar, and perhaps additional, procedures to those available when a court reviews an application for public-defender services would be appropriate in the bail review setting where such an application has been offered and the veracity of the information in that application is challenged. See 13 V.S.A. § 5236(d) - (e) (permitting clerk of court or judicial officer to require applicant for public-defender services to provide court with additional "proof of income" and to request from Commissioner of Taxes a "nonspecific report of the adjusted gross income as shown on the [applicant's] Vermont tax return").[7]
*607 ¶ 21. Defendant argues that the revisions to 13 V.S.A. § 7554 have created an opportunity for the Court to implement policy changes. He advocates that we interpret the statute to require that the maximum amount of bail imposed not exceed the maximum fine that could be imposed under an accused's charges. However, "[w]hen construing a statute, our paramount goal is to effectuate the intent of the Legislature." State v. Rajda, 2018 VT 72, ¶ 14, --- Vt. ----, 196 A.3d 1108 (quotation omitted). If the Legislature had intended to change the law in this way, it would have done so explicitly, just as it has for misdemeanor charges. See 13 V.S.A. § 7551(b) (prohibiting the imposition of bail exceeding $ 200.00 for persons charged with a misdemeanor that is eligible for expungement). We therefore cannot accept defendant's invitation to reconstitute the bail statute in this way.
Affirmed.

At the bail-review hearing, neither party offered testimony or any other type of evidence.

Defense counsel acknowledged that the extent of the inculpatory evidence could change once the State produced a video recording of the incident in discovery, which it had not done at the time of the bail-review hearing.

I respectfully disagree with my colleague Justice Skoglund's dissent for several reasons. Perhaps most importantly, this dissent, by emphasizing the definition of "flight from prosecution" in the revised statute, incorrectly construes the law to require past "specific behaviors" or a past "action" by an accused "specifically designed to avoid prosecution." Post, ¶¶ 23-24. Contrary to this interpretation, the statute requires courts to predict whether the risk that a defendant might engage in future behaviors or actions to evade court proceedings can be "reasonably mitigate[d]" by conditions other than bail. See 13 V.S.A. § 7554(a)(1). An accused's prior commission of an act to flee from prosecution is just one of several factors that a court must consider when deciding whether a defendant poses such a risk. See id. § 7554(b)(1) (requiring courts to consider, among other factors, an "accused's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings").

The prior version of the bail statute only required consideration of an accused's "financial resources," with no reference to ability to post bail, when imposing a condition of release. 2017, No. 164 (Adj. Sess.), § 3. The new statute not only requires consideration of an "accused's ability to post bail," but, as noted above, it also separately requires "consideration of the defendant's financial means" before a court may impose the execution of a surety bond as a condition of release. 13 V.S.A. § 7554(a)(1)(D)-(E).

Defendant also argues that the court abused its discretion in imposing bail at $ 100,000 because this amount of bail is "in reality a hold without [bail]." This argument, however, relies on defendant's assertion that he poses no risk of flight from prosecution. Indeed, defendant did not quarrel with the bail figure itself when he argued that, "[o]n these facts, no bail should have been imposed-again, there were no facts suggesting that Mr. Rougeau posed any risk of flight from prosecution." Because we hold that the trial court's conclusion to the contrary was not an abuse of discretion, we do not address this argument further. Justice Robinson argues in dissent that the bail-review court was required to explicitly conclude that the amount of bail imposed is the lowest amount necessary to reasonably mitigate the risk that defendant might flee from prosecution. Post, ¶ 48. However, the law does not require the court to make such an explicit finding here, where defendant has only argued that he poses no risk of flight, and he has not also argued that a lesser amount of bail would reasonably mitigate his risk of flight. See 13 V.S.A. § 7554(d)(1) (requiring bail-review court to amend conditions "as requested" by defendant or to "set forth ... a reasonable basis for continuing the conditions").

Defendant does not argue, and we do not hold, that the public-defender application must be taken into account in all cases in which there is such an application in the court file, even if not requested by the parties. This is consistent with the rules of evidence on the taking of judicial notice of adjudicative facts. See V.R.E. 201(c)-(d) (granting courts discretion to take judicial notice, whether requested or not, but requiring courts to take judicial notice if requested by a party and supplied with the necessary information).

"Financial information" obtained under subsections (d) and (e) of the public-defender-services statute is "confidential" and only available for review by the clerk or judicial officer, or the person who has provided it. 13 V.S.A. § 5236(f) -(g). However, we note that any decision by a defendant at a bail-review hearing to request that a court take into account "financial information" furnished under subsections (d) or (e) would constitute a waiver of confidentiality to whatever extent the confidential information is relevant to the court's determination regarding a defendant's finances.