NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 41

No. 2020-118

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| James C. Lohr | April Term, 2020 |

John R. Treadwell, J.

Dana Nevins, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellant.

Daniel Stevens, Public Defender, Brattleboro, for Defendant-Appellee.


PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.    **COHEN, J.**   Defendant James Lohr was held without bail prior to trial under 13 V.S.A. § 7553a, entitling him to a trial within sixty days pursuant to Chapter II, § 40 of the Vermont Constitution and 13 V.S.A. § 7553b.  When his trial could not occur within that timeframe, the superior court released him on conditions under 13 V.S.A. § 7554 without imposing bail.  The State appeals, arguing that the court was required to impose bail under §§ 40 and 7553b, and, separately, that the court erred in releasing defendant without bail under § 7554.  We affirm.

¶ 2.    Defendant is charged with aggravated and simple assault under 13 V.S.A. §§ 1024(a)(1) and 1023(a)(1) for allegedly hitting and strangling the complainant on February 10, 2020 at the complainant's home in an apartment building in Brattleboro.  At arraignment, the superior court released defendant on conditions, including that he not contact the complainant and

that he remain at least 300 feet from her. Shortly after the court imposed these conditions, the complainant called the police complaining that defendant had rung her doorbell. Police responded and located defendant at his friend's apartment in the same building where the complainant lives, prompting the State to charge defendant with violating the above conditions of release. Following a weight-of-the-evidence hearing, the court held defendant without bail under 13 V.S.A. § 7553a and ordered a trial within sixty days pursuant to Chapter II, § 40 of the Vermont Constitution and 13 V.S.A. § 7553b.[1]

¶ 3. Section 40 provides, in relevant part:

> Except in the case of an offense punishable by death or life imprisonment, if a person is held without bail prior to trial, the trial of the person shall be commenced not more than 60 days after bail is denied. If the trial is not commenced within 60 days and the delay is not attributable to the defense, the court shall immediately schedule a bail hearing and shall set bail for the person.

Vt. Const. ch. II, § 40; see also 13 V.S.A. § 7553b (mirroring this language). Defendant filed a motion under §§ 40 and 7553b, arguing that he should be released because his trial could not be held within sixty days due to this Court's Administrative Order 49, which suspended trials in the state to contain the spread of COVID-19. The court held a hearing, during which the State conceded that defendant satisfied the requirements of §§ 40 and 7553b, but argued that the phrase "shall set bail" directed the court to impose bail, which it requested at $50,000. The court disagreed and engaged in an analysis under 13 V.S.A. § 7554, which allows a court to impose conditions of release with or without bail to mitigate a risk that a defendant will flee from prosecution and to protect the public. Applying the § 7554 framework, the court released defendant on conditions without imposing bail. The State appeals under 13 V.S.A. § 7556(c), arguing that the court was

---

[1] Defendant appealed that decision, and a single Justice affirmed. See State v. Lohr, No. 2020-078, 2019 WL 8323572 (Vt. Mar. 17, 2020) (unpub. mem.), https://www.vermont judiciary.org/sites/default/files/documents/eo20-078_0.pdf [https://perma.cc/WXG6-H8D4].

required to impose bail under §§ 40 and 7553b, and that, in any event, the court erred in releasing defendant without bail under § 7554.

¶ 4. We first determine whether the sixty-day rule in §§ 40 and 7553b mandates the imposition of bail, or whether it refers the court to a § 7554 analysis. This is an unresolved question of law that we review without deference. See, e.g., State v. Collins, 2017 VT 85, ¶ 8, 205 Vt. 632, 177 A.3d 528 (mem.) ("We review questions of law . . . de novo."). The sixty-day rule has been addressed twice before: first, in State v. Lontine, 2016 VT 26, 201 Vt. 637, 142 A.3d 1058, which addressed the rule's applicability, and second, in State v. Kelcey, No. 02-398, 2002 WL 34422470 (Vt. Sept. 1, 2002) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/ files/documents/eo02398.pdf [https://perma.cc/3EFF-ZELV], which remanded a case to the trial court to "set conditions of release" when a trial was unlikely to be held within sixty days. Lontine, however, did not consider the question presented in this case, and Kelcey lacks the required analysis to provide any guidance.

¶ 5. Because we are interpreting identical language in a constitutional amendment and a statute, " 'we look primarily to the intent of the voters in adopting the amendment, but we also consider the intent of the Legislature in adopting' the statutory counterpart." State v. Pellerin, 2010 VT 26, ¶ 5, 187 Vt. 482, 996 A.2d 204 (quoting State v. Madison, 163 Vt. 360, 368, 658 A.2d 536, 541 (1995)); see also 1993, No. 143 (Adj. Sess.), §§ 2-3, 6 (adding §§ 7553a and 7553b and making them effective upon adoption of proposed amendment to § 40). When construing parallel constitutional and statutory provisions, we begin with the familiar plain-language analysis. See Pellerin, 2010 VT 26, ¶ 7; Madison, 163 Vt. at 368, 658 A.2d at 541-42. "If the plain language is clear and unambiguous, we will enforce it according to its terms." Pellerin, 2010 VT 26, ¶ 7 (quotation omitted); see also Peck v. Douglas, 148 Vt. 128, 133, 530 A.2d 551, 554 (1987) ("If the constitutional language, in and of itself, unambiguously furnishes answers to the questions for decision, it prevails over extraneous aids to interpretation.").

¶ 6. However, we have recognized that certain terms have legal meanings distinct from common usage, such that it would be speculative to determine the average voter's understanding of the language. See Madison, 163 Vt. at 368, 658 A.2d at 542. In such circumstances, we turn to alternative means of construction to divine the intent of the voters, including judicial decisions and legal commentaries. Id. As for statutory construction, "if the statute is ambiguous, we ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.).

¶ 7. Additionally, although constitutional and statutory interpretation are distinct analyses, rules of statutory construction have a logical force that makes them suitable to constitutional interpretation, if carefully employed. See Turner v. Shumlin, 2017 VT 2, ¶ 24, 204 Vt. 78, 163 A.3d 1173 ("The standards for interpreting constitutional language and meaning, though related, are not the same as for ordinary statutes. Canons of construction, if applied, must be used more cautiously and sometimes differently." (quoting Peck, 148 Vt. at 132, 530 A.2d at 554)). We apply two longstanding rules of construction in construing § 40 of the Constitution in this case. First, we do not read sentences or phrases in isolation; instead, we examine "the whole and every part" of a provision, together with others governing the same subject matter, as parts of a system. State v. Berard, 2019 VT 65, ¶ 12, __ Vt. __, 220 A.3d 759 (quotation omitted); see also Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). Second, we avoid interpretations that lead to absurd results. See, e.g., Munson v. City of S. Burlington, 162 Vt. 506, 510, 648 A.2d 867, 870 (1994). These rules are of course right at home in our parallel consideration of the Legislature's intent in enacting the statutory counterpart in § 7553b.

4

¶ 8. Applying these principles, we conclude that the language "shall set bail" in the sixty-day rule is ambiguous and has a legal meaning beyond what common usage may suggest, justifying an analysis past its plain language. We first note that the imperative "shall" generally means that the provision is mandatory. State v. Hemingway, 2014 VT 48, ¶ 11, 196 Vt. 441, 97 A.3d 465. The sixty-day rule provides that if its conditions are met, "the court shall immediately schedule a bail hearing and shall set bail for the person." Vt. Const. ch. II, § 40; 13 V.S.A. § 7553b. Thus, we know that whatever "set bail" means, the court must do it, and it must hold a hearing before doing so. We also know what "bail" means for the purpose of the statute. The Legislature defined bail as "any security, including cash, pledged to the court to ensure that a person charged with a criminal offense will appear at future court proceedings."[2] 13 V.S.A. § 7576(2). That much is clear.

¶ 9. The State argues that "shall set bail" can only mean "must impose bail." If we read phrases in isolation and ignored absurd results, this would indeed be the only possible interpretation. Because we do not, it is not. The ambiguity and meaning of the phrase only emerge when we apply the rules of construction identified above. The first provision in § 40 is that "[e]xcessive bail shall not be exacted for bailable offenses." Vt. Const. ch. II, § 40; see also U.S. Const. Amend. VIII ("Excessive bail shall not be required . . . ."). It is settled that "the sole constitutionally legitimate purpose of monetary conditions of release is to provide 'additional assurance of the presence of an accused.' " State v. Pratt, 2017 VT 9, ¶ 13, 204 Vt. 282, 166 A.3d 600 (quoting State v. Cardinal, 147 Vt. 461, 464, 520 A.2d 984, 986 (1986)); see also Stack v.

---

[2] The Legislature adopted this definition in 2002. See 2001, No. 124 (Adj. Sess.), § 11. Lontine did not recognize this definition and instead relied on differing dictionary definitions of bail. 2016 VT 26, ¶ 41. It is settled that "[w]hen a statute internally defines a term, we must use that definition." State v. Baron, 2004 VT 20, ¶ 9, 176 Vt. 314, 848 A.2d 275; see also Stenberg v. Carhart, 530 U.S. 914, 942 (2000) (holding that "[w]hen a statute includes an explicit definition, we must follow that definition"). Accordingly, while we uphold Lontine in all other respects, we clarify that the meaning of bail is that provided by the Legislature in 13 V.S.A. § 7576(2).

Boyle, 342 U.S. 1, 5 (1951) ("Bail set at a figure higher than an amount reasonably calculated to fulfill [the purpose of assuring the presence of an accused] is 'excessive' under the Eighth Amendment."). It follows that "bail may be used only to assure the defendant's appearance in court and cannot be used as a means of punishing the defendant, nor of protecting the public." Pratt, 2017 VT 9, ¶ 13 (quotation omitted); see also State v. Rougeau, 2019 VT 18, ¶ 13, __ Vt. __, 209 A.3d 599 (explaining that Legislature amended § 7554 in 2018, replacing language about risk of not appearing in court with phrase "risk of flight from prosecution," defined as "any action or behavior undertaken by a person charged with a criminal offense to avoid court proceedings" (quoting 13 V.S.A. §§ 7554(a)(1), 7576(9))). Accordingly, under the Vermont and U.S. Constitutions, a court cannot impose bail without first determining that the defendant presents a risk of flight from prosecution. Any bail imposed without this consideration would be excessive as a matter of law. This rule is reflected in § 7554, which provides that "[t]he defendant shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond . . . unless the judicial officer determines that such a release will not reasonably mitigate the risk of flight from prosecution as required." 13 V.S.A. § 7554(a)(1).

¶ 10. Section 40 also provides that:

> A person accused of a felony, an element of which involves an act of violence against another person, may be held without bail when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

Vt. Const. ch. II, § 40. Almost identical language is employed in 13 V.S.A. § 7553a. The superior court can hold a defendant without bail under these provisions if the defendant presents a substantial risk of physical violence against the public. Conspicuously absent from this part of § 40 and from § 7553a is any mention of risk of flight. Thus, when the court applies these provisions, it may hold a defendant without bail without considering whether the defendant

6

presents a risk of flight from prosecution. If the court so holds a defendant, the defendant is entitled to a trial within sixty days. See Vt. Const. ch. II, § 40; 13 V.S.A. § 7553b. If the trial cannot take place in that timeframe through no fault of the defense, the State's interpretation of §§ 40 and 7553b would result in the court automatically imposing bail without considering whether the defendant presents a risk of flight. This would contravene the constitutional rule that bail can only be imposed to mitigate a risk of flight, and it would render any bail so imposed excessive as a matter of law. This interpretation would make the Vermont Constitution inconsistent with itself and with its federal counterpart. It would also render § 7553b unconstitutional under both charters. The voters and the Legislature could not have intended this result.

¶ 11. The State seeks to avoid this result by arguing that once a court holds a defendant without bail under § 7553a, a presumption attaches that the defendant presents a risk of flight. It observes that we have recognized a similar presumption under 13 V.S.A. § 7553 and its constitutional counterpart in § 40, which allow a court to hold a defendant without bail if the defendant is charged with an offense punishable by life imprisonment and the evidence of guilt is great. See State v. Blackmer, 160 Vt. 451, 460, 631 A.2d 1134, 1140 (1993). In Blackmer, we indeed noted that "[t]he separate treatment of life imprisonment cases in Vermont's [C]onstitution indicates that such crimes are treated as a surrogate for a high risk of flight" and that "a defendant who has a recent record of violating important conditions of release is an increased risk of flight when facing possible life imprisonment." Id. (quotation omitted). These propositions are true— when a defendant faces life imprisonment. Unlike the life imprisonment cases of § 7553, countless defendants that do not face life imprisonment can be held without bail under § 7553a. See 13 V.S.A. § 7553a (requiring only felony that involves act of violence); id. § 1 (classifying felonies, inter alia, as "any offense whose maximum term of imprisonment is more than two years"). There is also no basis to assume that all defendants held without bail under § 7553a will have a record of violating conditions of release. Thus, Blackmer does not support the State's contention that all

7

defendants held without bail under § 7553a necessarily present a risk of flight from prosecution. Our reasoning regarding § 7553 in <u>Blackmer</u> does not extend to § 7553a.[3]

¶ 12. The State also argues that its risk-of-flight presumption arises from the necessary findings under § 7553a that the defendant's release poses a substantial threat of physical violence to the public and that no conditions of release will prevent the violence. It maintains that such findings are an implicit conclusion that the defendant will not follow court orders, and therefore will not follow an order to return to court. This argument is unpersuasive. That a defendant poses a substantial threat of violence to the public which no conditions of release can prevent does not necessarily mean that the defendant poses a risk of flight from prosecution. A defendant may have the means and intent to inflict harm on a member of the public but not the means or intent to flee a jurisdiction. Although the same set of facts may support both, risk of violence and risk of flight are two distinct analyses. Indeed, at the § 7553b hearing in this case, the State conceded that risk of flight is not relevant to a § 7553a hearing and explained to the court that its witness would specifically testify regarding risk of flight. The factual variations in pretrial release and detention cases are so numerous that the State's presumption would risk countless bail orders without a proven risk of flight. The constitutional imperative to find a risk of flight before imposing bail cannot rest on the State's unsupported presumption.

---

[3] We anticipated this in <u>Blackmer</u> itself, where we observed:

> We recognize . . . that th[e] relationship [between life imprisonment and risk of flight] may not hold true if the Legislature adopts a theoretical life imprisonment punishment for crimes where there is no serious risk any defendant will ever be sentenced to life imprisonment. Further, as is currently proposed, the constitutional right may be narrowed further to allow denial of bail in other circumstances or to implement other purposes. Neither of these circumstances is present here.

160 Vt. at 460 n.3, 631 A.2d at 1140 n.3. The public-safety provision of §§ 40 and 7553a is such a circumstance we anticipated in 1993. See 1993, No. 143 (Adj. Sess.), §§ 2, 6 (adding § 7553a and making it effective upon adoption of proposed amendment to § 40).

¶ 13.    The State next analogizes to another aspect of our law regarding § 7553 to argue that the § 7554 risk-of-flight analysis is integral to the § 7553a analysis, so that someone held pursuant to § 7553a is presumptively a flight risk.  We have held that if the requirements of § 7553 are met, a presumption in favor of incarceration arises, but the court may rely on § 7554 and exercise discretion to release a defendant on bail.  See, e.g., State v. Auclair, 2020 VT 26, ¶ 3, __ Vt. __, __ A.3d __.  Relying on this § 7553 case law, the State argues that the court may similarly find the elements of § 7553a satisfied but nevertheless exercise discretion to release a defendant on bail under § 7554.  Accordingly, the argument continues, if the court holds the defendant without bail under § 7553a, by the time the court turns to the § 7553b sixty-day-rule analysis, it would already have conducted a § 7554 risk-of-flight analysis and concluded that defendant posed a risk of flight.

¶ 14.    Once again, our law regarding § 7553 does not translate to § 7553a.  It would be incongruous to find under § 7553a that release poses a substantial threat of physical violence to the public that no combination of conditions of release will reasonably prevent, and then nevertheless release the defendant on bail or conditions under § 7554.  Once the court finds (1) that the defendant is charged with a felony; (2) "an element of which involves an act of violence against another person"; (3) that the evidence of guilt is great; and that, "based upon clear and convincing evidence," (4) the defendant's release "poses a substantial threat of physical violence to any person," (5) that "no condition or combination of conditions of release will reasonably prevent," 13 V.S.A. § 7553a (emphasis added), there is a manifest need for incarceration and no reason to turn to § 7554.  In other words, once the elements of § 7553a are satisfied, there is no safe basis to release the defendant and therefore no basis to engage in a risk-of-flight analysis under § 7554.[4]

---

[4]  Both the superior court and the reviewing Justice in this case considered this discretion to release under §§ 7553a and 7554.  As noted, this was unnecessary, but the decisions to do so have no effect on this case because neither ultimately exercised this discretion.  See Lohr, 2019 WL 8323572, at *5.

In exchange for this need for incarceration, the sixty-day rule in §§ 40 and 7553b requires a trial within sixty days. If the trial cannot occur within that timeframe, the defendant is then made bailable under § 7554, notwithstanding the risk to the public. This is the balance the voters and the Legislature struck between security and liberty.

¶ 15. In short, the State's arguments that we can constitutionally dispense with the analysis under § 7554, and can presume that bail is required in § 7553b cases when the trial is not commenced within sixty days, are unpersuasive. To square that requirement with the prohibitions against excessive bail in § 40 of the Vermont Constitution and the Eighth Amendment to the U.S. Constitution, we must recognize that in some cases the only proper bail to set is no bail—or $0 bail.

¶ 16. If the requirements of § 7553b are satisfied, the court must hold a hearing and engage in an analysis under 13 V.S.A. § 7554. Under § 7554, the court must first determine whether the defendant presents a risk of flight from prosecution. See 13 V.S.A. § 7554(a)(1). If the defendant presents a risk of flight, the court must impose the least restrictive condition or combination of conditions that will reasonably mitigate the risk of flight, including potentially imposing bail under §§ 7554(D) and (E) (providing for secured appearance bond and surety bond). Id. The court can then proceed under § 7554(a)(2) and impose conditions of release aimed at ensuring the protection of the public. Alternatively, if the defendant does not present a risk of flight from prosecution, the court must release the defendant "on personal recognizance or upon the execution of an unsecured appearance bond." 13 V.S.A. § 7554(a)(1). The court can then also turn to § 7554(a)(2) and impose conditions of release to ensure the protection of the public. Under this framework, if a defendant who has been held without bail pursuant to § 7553a does not present a risk of flight, or if bail is not among the least restrictive conditions required to reasonably mitigate the risk of flight, the court may essentially set bail at $0—or no bail at all.

¶ 17.    We recognize that our view that "setting bail" may in some cases mean setting no bail at all, or effectively $0 bail, is in some tension with the statutory definition of bail, which on its face requires some amount of security pledged to the court to ensure a person's appearance at future proceedings.  See 13 V.S.A. § 7576(2).  But this is the only interpretation that gives effect to both the prohibition against excessive bail in § 40, and the requirement that the court "set bail" for a defendant held more than sixty days.  See State v. Yorkey, 163 Vt. 355, 358, 657 A.2d 1079, 1081 (1995) (noting that this Court strives to give effect to every part of legislative enactment); State v. Severance, 120 Vt. 268, 274, 138 A.2d 425, 429 (1958) (same).  Our interpretation is consonant with state and federal constitutional principles, preserves the internal consistency of the Vermont Constitution and the latter's consistency with the federal charter, and ensures the coherence and constitutionality of the bail statutory scheme.  Moreover, our interpretation provides the court an analytical framework with which to impose bail, the conditions of release that should accompany a release on bail, and the method of reviewing and amending the conditions as circumstances change.  See 13 V.S.A. § 7554(a)(1)(D)-(E) (directing court to consider defendant's financial means in setting bail); id. § 7554(b)(1)-(2) (providing court with considerations in determining which conditions of release to impose); id. § 7554(d)-(e) (regulating review and amendment of conditions of release); id. § 7554(g) (governing admissibility of evidence in bail hearings).  Finally, our interpretation advances the purposes of the sixty-day rule, which is a speedy-trial rule.  Lontine, 2016 VT 26, ¶ 11.  A right to a speedy trial serves at least three purposes: "(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself."  Smith v. Hooey, 393 U.S. 374, 378 (1969) (quotation omitted).  It little serves these purposes to require automatic imposition of bail without guidance or a determination of need, which would result in many more defendants in pretrial incarceration without a reasonable basis.  " '[I]n our society liberty is the norm, and detention prior

11

to trial or without trial is the carefully limited exception.' " State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). The superior court correctly chose to follow a § 7554 analysis under the sixty-day rule of §§ 40 and 7553b.

¶ 18. We now turn to the State's argument that the court's decision to release defendant without bail under § 7554 was not supported by the proceedings below. An order releasing a defendant pursuant to § 7554 will be affirmed "if it is supported by the proceedings below," 13 V.S.A. § 7556(c), and we review the court's decision for an abuse of discretion. Rougeau, 2019 VT 18, ¶ 14. "[T]he trial court's discretion is broad, but the bail decision cannot be arbitrary." Auclair, 2020 VT 26, ¶ 6.

¶ 19. The court's first task under § 7554 is to determine whether the defendant presents a risk of flight from prosecution. See 13 V.S.A. § 7554(a)(1). In that determination, the court considers, "in addition to any other factors, the seriousness of the offense charged and the number of offenses with which the person is charged." Id. If the defendant presents a risk of flight, the court can impose conditions of release that will mitigate the risk of flight, including bail under § 7554(a)(1)(D) and (E). Id. In determining the conditions to impose, the court must "take into account" the following factors "on the basis of available information":

> the nature and circumstances of the offense charged; the weight of the evidence against the accused; the accused's employment; financial resources, including the accused's ability to post bail; the accused's character and mental condition; the accused's length of residence in the community; and the accused's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

Id. § 7554(b)(1).

¶ 20. At the § 7553b hearing in this case, defendant denied ringing complainant's doorbell and maintained that when the court imposed the conditions that he not contact the complainant and that he remain at least 300 feet from her, he was living with his friend and thus had to be in the same building as complainant. Defendant introduced new evidence at this hearing,

in the testimony of the director of operations for Groundworks Collaborative, a local nonprofit that provides support services to the homeless. The director testified that Groundworks could provide defendant with a room at a motel across town from complainant's building, where he would obtain meals and be under staff supervision. Defendant also introduced evidence that he needs cancer treatment at Brattleboro Memorial Hospital. The new housing proposal with staff supervision and the need for cancer treatment, defendant argued, militated against a finding of risk of flight.

¶ 21. The State too marshalled new evidence, in the testimony of a probation officer who had supervised defendant in 2012 and reviewed defendant's criminal history. The probation officer testified that in his opinion defendant presented a "moderate to high risk of flight." The officer testified that defendant has criminal records in Iowa, Massachusetts, and Vermont, including violations of probation, failures to appear, and violations of conditions of release. The officer further testified that the absence of stable residence and employment are risk factors bearing on risk of flight, while defendant's age and reported health issues were mitigating factors.

¶ 22. The court found that defendant has a criminal history in several states, including noncompliance with court orders and failures to appear, but observed that the failures to appear were in 2012 and 2015. It noted that defendant could reside at the proposed motel under staff supervision, and that he would not have to leave the motel. The court thus found that conditions of release without the imposition of bail would be sufficient to mitigate the risk of flight. It imposed the original conditions but made explicit that defendant had to remain away from complainant's apartment building and imposed a twenty-four-hour curfew at the motel.

¶ 23. The court's decision was supported by the proceedings and we find no abuse of discretion. The court found that defendant indeed posed a risk of flight but that this could be mitigated with nonmonetary conditions of release. Defendant's criminal history indicating a propensity for flight was tempered by the court's observation that the failures to appear were from 2012 and 2015. The probation officer's concern regarding the absence of a stable residence was

addressed by defendant's new housing proposal in the motel. Moreover, the officer himself testified that defendant's age and reported health issues were factors mitigating defendant's risk of flight, and defendant introduced evidence that he needs cancer treatment at Brattleboro Memorial Hospital, tying him to the community to an extent. The court's decision is further supported by its imposition of a twenty-four-hour curfew at the motel and the staff's ability to supervise defendant. We find no merit in the State's argument that the court erred in not explaining why it reached a different conclusion from the § 7553a hearing and from this Court's affirmance because, as noted, the analyses under §§ 7553a and 7554 are different and, in any event, both parties introduced new evidence in the latter hearing. In sum, the superior court engaged in a reasoned analysis based on the evidence both parties presented at the hearing and did not abuse its discretion in releasing defendant on conditions without imposing bail.

Affirmed.

FOR THE COURT:

Associate Justice

14