# ENTRY ORDER

SUPREME COURT CASE NO. 26-AP-008

JANUARY TERM, 2026

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Criminal Division |
| Ramone Hosten | } | |
| | } | CASE NO. 25-CR-11024 |
| | } | |
| | } | Trial Judge: Robert W. Katims |

In the above-entitled cause, the Clerk will enter:

In this appeal defendant Ramone Hosten seeks de novo review pursuant to 13 V.S.A. § 7556(d) and V.R.A.P. 9(b) of the Chittenden Criminal Division's order holding him without bail pursuant to 13 V.S.A. § 7553a.

"In conducting a review de novo of a challenged finding or conclusion, a justice must come to an independent decision based on the record" and "[t]he justice need not pay any deference to decisions of the lower court when reviewing the challenged findings and conclusions." State v. Madison, 163 Vt. 390, 393 (1995). The parties have stipulated to the trial court record, with defendant supplementing the record with a single exhibit. See V.R.A.P. 9(b)(1)(E) ("The reviewing justice will conduct a de novo review based on the record and any additional evidence authorized by the justice for good cause shown.").[1]

Defendant is charged with two offenses—first-degree aggravated domestic assault in violation of 13 V.S.A. § 1043(a)(1) and domestic assault in violation of 13 V.S.A. § 1042— alleging assaults of the complainant on or about September 19, 2025. The State applied for and obtained an arrest warrant for defendant on October 15, 2025. Defendant was arraigned on December 11, 2025, and held without bail pending a weight-of-the-evidence hearing. That hearing was held on January 7, 2025, and the trial court found, "taking [the evidence] in the light most favorable to the State and excluding modifying evidence, that [the complainant] did describe that she was subjected to being strangled by [defendant]."

The trial court further found by clear and convincing evidence that defendant's release posed a substantial threat of physical violence to the public, and that no condition or combination

---

[1] The Court finds that the information contained in defendant's exhibit # 6 could not reasonably have been obtained and provided before the bail hearing in the trial court. Therefore, defendant has established good cause for admission of this exhibit. This Court found at the hearing that defendant had not established good cause regarding a second exhibit.

of conditions of release would reasonably prevent the physical violence. The court set a jury draw for February 9, 2026, so that trial could commence within sixty days of defendant's detention without bail. 13 V.S.A. § 7553b(a); State v. Downing, 2020 VT 101, ¶ 28, 213 Vt. 468 (describing "the sixty-day clock begins to run" when preliminary pretrial detention is ordered).

On January 9, 2026, defendant filed a notice of appeal. The undersigned judge was assigned "to conduct a de novo hearing as a Supreme Court Justice, pursuant to 13 V.S.A. § 7556(d)" on January 16, 2026. A hearing was held on January 22, 2026.

Defendant's argument on appeal is threefold. He argues that the State has not established (1) that evidence of guilt is great, (2) that he poses a substantial threat of violence to any person, or (3) that no condition or combination of conditions will reasonably prevent such violence. In other words, he challenges every element of detention pursuant to § 7553a for a felony crime of violence. This Court reviews the record evidence in this matter without deference to the decision of the trial court.

## I. Section 7553a Standard

"A defendant charged with a criminal offense is entitled to release on conditions pursuant to 13 V.S.A. § 7554, unless an exception applies under § 7553 or § 7553a." State v. Labor, No. 23-AP-288, 2023 WL 6290640, at *2 (Vt. Sept. 26, 2023) (unpub. mem.); see also State v. Shores, 2025 VT 62, ¶ 3 (noting two exceptions—§ 7553 and § 7553a—to the "general presumption of release").

> To hold a defendant without bail prior to trial under 13 V.S.A. § 7553a, a court must find that (1) defendant is charged with a felony; (2) an element of that felony involves an act of violence against another; (3) the evidence of defendant's guilt is great; and— by a standard of clear and convincing evidence—that (4) defendant's release would pose a substantial threat of physical violence to any person; and (5) no condition or combination of conditions of release will reasonably prevent such violence.

State v. Sanborn, No. 2020-316, 2021 WL 75228, at *3 (Vt. Jan. 4, 2021) (unpub. mem.) (citing 13 V.S.A. § 7553a and State v. Lohr, 2020 VT 41, ¶ 14, 212 Vt. 289).

## II. The State Has Established that Evidence of Guilt Is Great

Defendant is charged with first-degree aggravated domestic assault in violation of 13 V.S.A. § 1043(a)(1). The charge is a felony with an element that involves an act of violence against another person. See 13 V.S.A. § 1 ("[A]ny offense whose maximum term of imprisonment is more than two years . . . is a felony); 13 V.S.A. § 1043(b) ("A person who commits the crime of first degree aggravated domestic assault shall be imprisoned not more than 15 years").

2

To prove that evidence of guilt is great under 13 V.S.A. § 7553a,

> the State must establish by affidavits, depositions, sworn oral testimony, or other admissible evidence that it has substantial, admissible evidence as to the elements of the offense . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial. . . . [T]his standard adds two elements beyond that necessary for establishing probable cause: (1) that substantial, admissible evidence of guilt exists, and (2) the evidence can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty. [Furthermore,] this standard cannot be met by inadmissible evidence.

State v. Blackmer, 160 Vt. 451, 454 (1993) (quotations and emphases omitted); see also Madison, 163 Vt. at 393-394 ("[T]he term 'evidence of guilt is great' is not an ill-defined legal term of art. Its meaning became fixed when this Court decided State v. Duff, 151 Vt. 433, 439-440 . . . (1989)" and "[t]he [L]egislature has not suggested in any manner that it intended to depart from its meaning as defined in Duff."). Affidavits "must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify." V.R.Cr.P. 12(d)(3) (emphasis added).

The standard the Court must apply is well-settled—this Court must "consider whether the evidence, taken in the light most favorable to the State, excluding modifying evidence, would fairly and reasonably tend to show defendant committed the offense, beyond a reasonable doubt." State v. Cram, 2008 VT 55, ¶ 2, 184 Vt. 531 (mem.) (quotation omitted). The Court has clarified that "[b]y modifying evidence, we mean exculpatory evidence introduced by defendant, such as countervailing testimony." State v. Gibney, 2003 VT 26, ¶ 14, 175 Vt. 180; see also Cram, 2008 VT 55, ¶ 2 (citing Gibney, 2003 VT 26, ¶ 14). We have further noted that the Gibney discussion of modifying evidence, "[t]hough laconic and indirect, . . . nevertheless reflect[s] that 'modifying evidence,' . . . is testimonial evidence introduced by the defense in contravention to the State's evidence, the credibility or weight of which is ultimately for the factfinder's determination." State v. Stolte, 2012 VT 12, ¶ 11, 191 Vt. 600. Consequently, the "purpose of excluding modifying evidence . . . is 'to avoid judicial decisions on credibility . . . .' " Sanborn, 2021 WL 75228, at *4 (quoting State v. Breer, 2016 VT 120, ¶ 11, 203 Vt. 649).

Circumstantial evidence alone may be sufficient to establish proof beyond a reasonable doubt. State v. Martin, 2007 VT 96, ¶ 8, 182 Vt. 377. "In assessing circumstantial evidence, the fact-finder may draw rational inferences to determine whether disputed ultimate facts occurred." State v. Durenleau, 163 Vt. 8, 12 (1994). Again, such evidence must be viewed in the light most favorable to the State. State v. Hanson, 141 Vt. 228, 233 (1982) (rejecting "the notion that [wholly circumstantial evidence] must have been so cogent as to exclude every reasonable hypothesis consistent with innocence").

Applying this standard to the evidence adduced at the hearings, the record shows that on September 19, 2025, defendant returned to the apartment where the complainant lived with their children. He was upset that the complainant had not prepared dinner. She then went for a walk

and when she returned, she found that defendant had bought Chinese food. Defendant blamed the complainant for having to spend money. They continued to argue and defendant then lunged at her. The complainant ended up on the floor near the apartment stairs. Defendant had one hand on her neck for several minutes. At times he would squeeze and at other times he would be yelling at her saying things such as, "Why do you make me do this?" The complainant described his demeanor as scary and "possessed." The complainant believed that there were times when she was not able to breathe during the incident.[2] Eventually, the complainant was able to get away from defendant. He then shoved some of the food in her face. The complainant then ran to the bathroom. Defendant kicked the door down and grabbed the complainant and held her head down in the bathtub with the water running. She felt that defendant was going to drown her. Defendant left the bathroom only to return a short time later and throw a broken piece from the door at the complainant, causing her minor injury. Defendant then left the apartment.

The complainant was disoriented during and after the incident. She experienced a sore throat and had a raspy and hoarse voice in the aftermath. Her neck was visibly bruised in the days after the incident.

On the date of the incident, September 19, 2025, at about 6:20 p.m., Winooski Police Department Corporal Jason Ziter and other officers responded to a reported call of a domestic disturbance. Upon arrival, Cpl. Ziter observed the complainant sitting on the steps outside her apartment. Cpl. Ziter subsequently entered the apartment where he saw food on the kitchen floor. Cpl. Ziter did not observe any injuries to the complainant. He determined that defendant was not present.

On October 3, 2025, the complainant provided a sworn oral statement regarding the September 19, 2025, incident.

The State's information alleged that defendant "recklessly caused serious bodily injury to a family or household member, to wit [the complainant]." The State further alleged that defendant caused such injury by "strangling" the complainant. Thus, as charged, serious bodily injury means "strangulation by intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." 13 V.S.A. § 1021(2)(B). The State's charging decision is not a model of clarity—the State alleges that serious bodily injury was caused recklessly and yet also necessarily asserts that defendant acted intentionally in impeding the complainant's normal breathing by applying pressure to the throat or neck.

Given the inconsistent mental states alleged, the Court will treat the State's information as charging willful conduct in Count 1. 13 V.S.A. § 1043(a)(1). Willfully and intentionally are synonymous—a person acts intentionally if he or she acts purposely, and not inadvertently, because of mistake, or by accident. State v. J.S., 2018 VT 49, ¶ 4, 207 Vt. 379 ("A defendant's conduct is willful if the defendant intended to do the act . . . [and it did not] result from mistake, an accident, or a misunderstanding" (quotation omitted)).

---

[2] The complainant described the strangulation as "not full on . . . not like having me not breathing for a whole few minutes."

4

For purposes of the domestic-assault statutes, " 'family or household members' means persons who are eligible for relief from abuse under 15 V.S.A. chapter 21." 13 V.S.A. § 1041. "Household members" are defined in 15 V.S.A. § 1101(3) as "persons who, for any period of time, are living or have lived together, are sharing or have shared occupancy of a dwelling, are engaged in or have engaged in a sexual relationship, or minors or adults who are dating or who have dated." There is no definition of "family member" in Chapter 21 of Title 15. Embree v. Balfanz, 174 Vt. 560, 561 (2002) (mem.).

Viewed in the light most favorable to the State, the evidence establishes all elements of the charged offense. Defendant and the complainant share children. Even if not living together, it is apparent that they have lived together in the past. On September 19, 2025, over a period of several minutes, defendant had his hand on the complainant's neck and was intermittently yelling at her and squeezing her neck. His conduct caused bruising that was visible in the following days and resulted in a sore throat and a raspy and hoarse voice. A jury could reasonably infer—considering the direct and circumstantial evidence—that defendant impeded the complainant's breathing during the incident and that he did this willfully.

## III. The State Has Presented Clear and Convincing Evidence that Defendant Poses a Substantial Risk of Violence to Any Person and that No Condition or Combination of Conditions Will Reasonably Prevent that Violence

Having found that evidence of guilt is great for a felony crime of violence, this Court must next consider whether the State has established by clear and convincing evidence that defendant poses a substantial risk of violence to any person and that no condition or combination of conditions will reasonably prevent that violence. Sanborn, 2021 WL 75228, at *3.

### A. While the Rules of Evidence Do Not Apply, the State's Evidence Must Be Reliable

Section 7553a(b) of Title 13 states:

> Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law. Nothing in this subsection shall be construed to alter the existing standard applied to determine whether evidence of guilt is great under this section.

Thus, the Vermont Rules of Evidence do not apply to proceedings pursuant to 13 V.S.A. § 7553a(a).

However, "[r]elaxed standards for admissibility are not to be equated with automatic admissibility. Judicial tolerance is not judicial license." State v. Davis, 477 A.2d 308, 314 (N.J. 1984). When liberty is at stake, this Court has noted the importance of the reliability of information considered. See State v. Lesage, 2021 VT 26, ¶¶ 20-21, 214 Vt. 637. Similarly, the California

Supreme Court has noted that "[a] trial court . . . must ensure its decision to detain an individual without bail . . . is supported by <u>reliable</u> information." <u>In re Harris</u>, 550 P.3d 116, 131 (Cal. 2024) (emphasis in original). Thus, the State's evidence must be reliable evidence. Admissible evidence is presumptively reliable. See V.R.E. 102 ("These rules shall be construed . . . to the end that the truth may be ascertained and proceedings justly determined."); see also <u>Commonwealth v. Thissell</u>, 928 N.E.2d 932, 936 (Mass. 2010) ("If the evidence is admissible under standard evidentiary rules, it is presumptively reliable."). Where, however, the State's evidence is not admissible under the Rules of Evidence, the State must separately establish the reliability of the proffered evidence for it to be admissible at the § 7553a(a) hearing. Cf. <u>State v. Spaulding</u>, 2014 VT 91, ¶ 37, 197 Vt. 378 ("[T]he proponent of the evidence at issue . . . has the burden of proving its admissibility.").

The State has proffered testimony, various affidavits, and other documents as evidence in support of its request to detain defendant. Many of these materials would not be admissible under the Vermont Rules of Evidence and, thus, the Court must determine their reliability. First, the court must consider the testimony of Probation Officer Densmore who testified primarily not from personal knowledge but based on his review of Department of Corrections records. The court below concluded that this was reliable hearsay and this Court agrees. The State did not seek to lay a foundation for the testimony under any exception to the hearsay rules. However, the testimony was limited to information contained in the Department's records regarding supervision of a probationer.[3] Next, the State has submitted a number of affidavits setting forth information based upon personal knowledge <u>and</u> information provided to the affiant by other parties. The Court concludes that information based upon personal knowledge is admissible at this stage—as it is for the determination of whether evidence of guilt is great. Hearsay contained in affidavits, however, does not contain the same level of reliability and the Court will not rely on such evidence absent other indicia of reliability or some applicable hearsay exception. Additionally, the State has submitted an uncertified copy of a probation warrant. While it would be better practice to file certified copies of such records, the Court is satisfied as to the reliability of the probation warrant in question. Finally, defendant's criminal history record is admissible. 20 V.S.A. § 2056a(d) ("A criminal history record obtained from the Center shall be admissible evidence in the courts of this State."); see, e.g., <u>State v. Regimbald</u>, 2022 VT 15, ¶ 18 (holding "that under 20 V.S.A. § 2056a(d), the trial court properly admitted and relied upon defendant's criminal-history record" when determining whether defendant could be held without bail pending trial pursuant to 13 V.S.A. § 7553).

---

[3] This Court does not find that <u>all</u> testimony derived from the records of the Department is necessarily reliable. The Court concludes that the limited and narrowly focused testimony presented from the records in this case is reliable.

B. The State Has Presented Clear and Convincing Evidence that Defendant Poses a Substantial Risk of Violence to Any Person and that No Condition or Combination of Conditions Will Reasonably Prevent that Violence

The State bears the burden of proof by clear and convincing evidence on the second stage of the analysis under 13 V.S.A. § 7553a.[4] "The statutory design presents a substantial evidentiary burden for the State . . . . The evidentiary standard to be applied to the analysis of facts found under § 7553a is the clear-and-convincing-evidence standard. That standard is not an easy one for the State to sustain." State v. Lontine, 2016 VT 26, ¶ 46, 201 Vt. 637, overruled on other grounds by Downing, 2020 VT 101, ¶ 22.

There are two parts to the further analysis under 13 V.S.A. § 7553a. First, the State must establish that defendant's release "poses a substantial threat of physical violence to any person." 13 V.S.A. § 7553a(a) (emphasis added). The State must also show "that no condition or combination of conditions of release will reasonably prevent the physical violence." Id.

The State has met its burden with respect to the first part of this analysis. The Court proceeds from its determination that the evidence is great that defendant willfully caused serious bodily injury to the complainant by strangling her on September 19, 2025. Additionally, the complainant's statement establishes that defendant has repeatedly engaged in such conduct over the course of their relationship. The State's evidence establishes by clear and convincing evidence that defendant poses a substantial threat of physical violence to the complainant.

Regarding the second part of the second stage of the § 7553a analysis, as the Court noted in Lontine,

> The usual manner of the State's proof is to point to instances of rule-breaking conduct in a defendant's past, notably a particular conviction history for failing to abide by court-imposed conditions such as conditions of release, prior probation violation conditions, or violations of relief-from-abuse orders. Another manner of proof is to demonstrate that a defendant's conduct with respect to the current victim is based on such powerful emotions that the defendant will be unable to conform his or her conduct to the court's directives.

2016 VT 26, ¶ 55. The Court has also noted a pattern of violent behavior towards household members as relevant to this factor. State v. Cerratani, No. 2002-067, 2002 WL 34423636, at *2 (Vt. Feb. 1, 2002) (unpub. mem.). In State v. Costantino, the Court upheld a decision to hold a defendant without bail for a "prolonged assault [that] was violent in the extreme" and noted that

---

[4] "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington v. Texas, 441 U.S. 418, 423 (1979) (quoting In re Winship, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)).

This reviewing justice concurs with the trial court's assessment that the degree of violence, coupled with the seeming disconnection between the ferocity of defendant's rage and any prior act on the part of his victim, raises significant questions as to his capability to control similar urges if released, notwithstanding any judicial order precluding contact.

Defendant's respect for legal authority remains particularly suspect in consideration of his criminal history. He spent eleven years under correctional supervision for rape. He seeks to underplay the significance of this earlier crime characterized by violence and profound disrespect for the victim, emphasizing the time since the conviction and his successful completion of parole. This Court draws a different inference. Having a serious felony already on his record, defendant might have been expected to conduct his affairs very cautiously with regard to keeping his behavior lawful. . . . [The defendant's] departures from legal norms clearly and compellingly demonstrate that whether under the compulsion of alcohol, or under the compulsion of a fixated impulse to command the circumstances at hand, defendant has a well-established history of violent or potentially dangerous law-breaking.

No. 2013-447, 2013 WL 9057066, at *3 (Vt. Nov. 27, 2013) (unpub. mem.).

At the time of the charged incident, defendant was on probation with conditions protecting the complainant and prohibiting violent and threatening behavior. These court-ordered conditions were not sufficient to protect the complainant. Defendant's criminal history includes convictions for violating conditions of release. The convictions are from more than a decade ago and, thus, the court accords them little weight in its analysis. However, defendant's recent conviction for resisting a lawful arrest and the facts underlying that conviction[5] give this Court no confidence in defendant's willingness or ability to abide by conditions protecting the complainant.

Defendant has proffered two potential responsible adults to supervise defendant. First, defendant proffered his mother. Defendant could reside with her at her home in Burlington. Her residence is approximately two-and-a-half miles from the complainant's home.[6] The court finds

---

[5] During an earlier investigation into allegations that defendant had assaulted the complainant, Winooski Police Department Officer Nathan March "attempted to take [defendant] into custody for aggravated domestic assault. When [defendant] was advised he was being placed under arrest and asked to place his hands behind his back [defendant] stated 'that's not going to happen.' " Officer March "then attempted to grab and gain control of [defendant] who then turned and started a short foot pursuit."

[6] A court may take judicial notice of the location of highways in Vermont. State v. Gignac, 119 Vt. 471, 475 (1957) (taking judicial notice of "the geography of the state" and referencing specific highways).

8

the proximity of the proposed residence does not mitigate the risk to the complainant. Cf. State v. Sweet, No. 2018-295, 2018 WL 4830457, at *2 (Vt. Sept. 27, 2018) (unpub. mem.) (noting as mitigating factor that proposed residence was "in a separate county from the complainant"). In the alternative, defendant identified his girlfriend as a potential responsible adult. Defendant has been living with his girlfriend in White River Junction. While the residence is a substantial distance from Winooski and in a different county, it is where defendant was residing at the time of the charged assault. The Court does not find that the risk to the complainant would be adequately mitigated if defendant were to reside with his girlfriend.

Defendant "has demonstrated a lack of respect both for the law and for specific conditions imposed on him." State v. Gibbons, No. 22-AP-214, 2022 WL 3594562, at *3 (Vt. Aug. 23, 2022) (unpub. mem.). The record unequivocally demonstrates that conditions of release are inadequate to prevent the risk of violence defendant poses to the complainant.

The Court thus concludes that the elements set forth in 13 V.S.A. § 7553(a)(a) are satisfied here.

### IV. Release of Defendant Pursuant to 13 V.S.A. § 7554

> If the requirements of § 7553a have been met, "there is a manifest need for incarceration" and [this] [C]ourt is not required to turn to [13 V.S.A.] § 7554. However, even when elements have been met, the court has narrow but not nonexistent discretion to nonetheless release defendant on conditions, including monetary bail.

State v. Bessette, No. 23-AP-023, 2023 WL 353907, at *3 (Vt. Jan. 20, 2023) (unpub. mem.) (citations omitted). The court declines to exercise its limited discretion. While there is no evidence that defendant poses a risk of flight, the evidence unequivocally establishes the risk of violence to the complainant and there is a manifest need for incarceration pending trial.

Defendant shall be held without bail pursuant to 13 V.S.A. § 7553a.

FOR THE COURT:

_____
John R. Treadwell, Superior Judge,
Specially Assigned

9